# Richmond

## James S. Newton v. City of Richmond.

March 11, 1957.

Record No. 4645.

Present, All the Justices.

The opinion states the case.

F. *Ward Harkrader, Jr.* (*G. William White, Jr.,* on brief), for the plaintiff in error.

*James A. Eichner, Assistant City Attorney,* (*J. E. Drinard, City Attorney,* on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

James S. Newton was convicted by a jury and fined one hundred dollars on the charge of operating an automobile on March 24, 1956 while under the influence of intoxicants in violation of § 80, ch. 40, Richmond City Code of 1937.[1] From a judgment confirming the verdict, we granted accused an appeal.

In his assignments of error Newton challenges instruction No. 3 given at the instance of the city and complains of the court's refusal to give instructions A and B tendered by him. Error is also assigned to the court's refusal to strike certain evidence and direct the jury to disregard it.

The city has moved us to reject Newton's assignments of error because of his failure to comply with Rule of Court 1:8 (formerly Rule 22), which follows:

"In civil and criminal cases, all objections to writs of every kind, pleadings, instructions, notices, the admissibility of evidence or other matters requiring a ruling or judgment of the trial court, shall state with reasonable certainty the ground of objection, and, unless it appears from the record to have been so stated, such objections will not be considered by this court except for good cause shown, or to enable this court to attain the ends of justice."

The record discloses that no objection was made to instruction No. 3, and upon the court's refusal to give instructions A and B, the only notation that appears in the record with regard to either of these instructions was stated thus: "Exception noted." Before rendition of judgment accused moved the court to set the "verdict of the jury aside as being contrary to the law and the evidence and for not allowing him certain instructions in the case", but no ground of objection to the disallowance of instructions was stated.

In construing and applying Rule 1:8 in *Harlow v. Commonwealth,* 195 Va. 269, 273, 77 S. E. 2d 851, we said:

---

[1] Ordinance adopted pursuant to Acts 1936, ch. 425, p. 1015, as amended, now § 15-553, Code 1950.

"The only objection to the rulings of the trial court as shown by the record is stated thus: 'Defendant objected and excepted to the action in giving instruction No. 2 offered by the Commonwealth, and to the refusal to give instruction F offered by defendant.'

"Rule 1:8 requires that the trial judge be informed of the precise points of objection in the minds of counsel so that he may rule intelligently, thereby avoiding delay and the expense incident to appeals, reversals and new trials upon grounds of objection which might have been obviated or corrected in the trial court. Therefore this Rule must be adhered to unless the exceptions therein stated apply. *Ross* v. *Schneider*, 181 Va. 931, 27 S. E. (2d) 154; *Rook* v. *Atl. Coast Line R. Co.*, 184 Va. 670, 36 S. E. (2d) 559; *Regensburg* v. *Commonwealth*, 159 Va. 1024, 167 S. E. 247. See annotations to Rule 1:8, Cum. Supp., 1950 Code.

In *Smith* v. *Commonwealth*, 165 Va. 776, 781, 182 S. E. 124, the following objection was made: 'The foregoing instructions Nos. A, B, C, D, E, F, and G were offered by the defendant and refused by the court to which action of the court the defendants excepted.' This objection was held insufficient because it failed to comply with Rule 22 (now 1:8)."

No objection was made to instruction No. 3, and nothing more than a mere "exception" was taken to the refusal to give instructions A and B. Clearly this does not constitute compliance with Rule 1:8, and the assignments of error pertaining to the giving and refusal of instructions will not be considered.

■ The testimony appears in the record in narrative form, and the objection made to the admissibility of certain evidence introduced by the city, which is the basis of an assignment of error, is also set out in narrative form. It follows:

"At this point counsel for the defendant moved the Court to strike from the record and instruct the jury to disregard all the testimony of Dr. Kaye relating to his findings of the blood test, which motion was overruled by the Court, and exception was made the *the* Court's ruling."

In accused's brief it is stated that his motion to strike Dr. Kaye's testimony relating to his findings upon analysis of the blood taken from the vial was made because *it had not been properly identified.* In the record this motion follows immediately after Dr. Kaye's testimony, but as recorded it does not specify the ground of objection as set out in the brief.

Determination of whether or not the objection meets the requirements of Rule 1:8 or should be considered by us to "attain the ends of justice" depends to some extent upon the scope of this witness's testimony and what part was open to question.

Dr. Kaye is an expert in blood analysis, and the fact that blood taken from a vial that bore accused's name was analyzed by him and that his analysis was correct does not seem to have been questioned when he testified. However, his testimony, though in narrative form, does show that he was subjected to interrogation bearing upon and challenging the identification of the blood that he analyzed. In fact, when all of his narrative testimony is read and weighed, it does not appear that any of it was questioned or challenged except that part that tended to identify the blood. We are thus led to believe that when request to exclude his findings was made, opposing counsel and the court were aware that the motion was directed toward the identification of the blood that had been analyzed. The motion to exclude the evidence from the jury did not properly state the ground relied upon. Yet the character of the witness's testimony, and the setting and circumstances under which the motion was made, disclose its purpose, and to attain the ends of justice, the motion to exclude the blood analysis findings is held to have been sufficient.

■ Was the evidence identifying the blood sufficient to establish, beyond a reasonable doubt, that the sample analyzed was blood extracted from accused? If not, the motion to exclude Dr. Kaye's findings should have been sustained and the analysis stricken from the jury's consideration.

Dr. Kaye is the State Toxicologist, and his qualifications as an expert in blood analysis to determine alcoholic content and the effect upon the human system of alcohol in the blood stream were conceded. This expert witness expressed the opinion that the drunk-o-meter test was not so accurate as the blood analysis test. He also said that "alcohol may affect different people differently at different times," but that an "alcoholic content of .15 or more" in the blood "is sufficient to cause any person to be under the influence of intoxicants" and that a .23 per cent alcoholic content would be definitely consistent with intoxication.

In testifying about his receipt and analysis of the sample of blood in question and how it came into his possession, he said:

"I examined and tested a sample of blood bearing the label as being the blood of James S. Newton taken on March 24, 1956, at the

Medical College of Virginia Hospital. I took this sample of blood from the safe *as* the hospital the day after the same had been taken. My analysis of this blood determined that the blood bore an alcoholic content of .23 per cent. In my opinion this definitely shows that the person from whom the sample was taken was under the influence of intoxicants *to a degree where he was not fit to operate an automobile.* (Emphasis added.)

        *        *        *        *        *        *        *

"I did not take the sample, and I could not say for sure who did. I don't know who put it in the safe. I would assume the night superintendent did. I don't know who the physician who took the sample gave it to, but it had to be handled by at least the physician and superintendent, two sets of hands, before I received it. I don't know who handled it before I *receive* it. The label bore Mr. Newton's name. I never saw Mr. Newton before today."

The only other testimony bearing upon the identity of the blood sample was given by officer G. H. Bowles, who arrested accused at the scene of a traffic accident. The record indicates that he testified prior to Dr. Kaye. In this connection he said:

"I asked him if he would take the drunk-o-meter test, which he agreed to do, so I took him to the station house where the test was given. Mr. Newton requested the test in writing. He was not satisfied with the results of the test, and so he was advised that he could have a blood test, if he so desired. He was taken to the Medical College Hospital and blood was drawn from his arm by a physician there. I observed the taking of the blood and the physician put a label on the container."

The container from which the analyzed blood was taken bore the name "James S. Newton" but officer Bowles did not attempt to describe the label in any manner. He did not even say that accused's name was written on the label, nor was the label or vial produced at the trial. Neither the physician nor the night superintendent, the former of whom it is said labeled the container and the latter of whom is supposed to have handled it and placed it in the safe, testified, nor was their absence explained.

So far as the record discloses, their identity is not known. The physician is not named nor is the recipient of the container identified for it is merely assumed that the night superintendent obtained the sample from someone and put it in the safe. Dr. Kaye did not know

and could not attempt to say who or how many persons handled or had access to the sample of blood taken from accused before a vial bearing accused's name came into his possession the next day. In short, officer Bowles' testimony proves that a sample of Newton's blood was extracted by an unnamed party at the Medical College Hospital and put in a container and labeled. Dr. Kaye's testimony shows that the next day he found a vial of blood with accused's name on it in the safe at the Medical College Hospital and he analyzed that blood.

The drunk-o-meter test was given Newton by an experienced officer shortly after Newton's truck had collided with a cab. It was accomplished by having accused breathe or blow into a small balloon "the contents of which" were then analyzed by chemicals and resulted in a finding of .24 alcohol content. There was also other evidence definitely tending to prove that Newton was under the influence of intoxicants when the truck he was driving collided with the cab. However, Newton testified that he was not under the influence of intoxicants and the testimony of another witness tended to corroborate him. Thus a jury issue was presented and the admissibility of the blood analysis was of vital importance.

In *Rodgers* v. *Commonwealth*, 197 Va. 527, 531, 90 S. E. 2d 257, we said:

"Such an analysis is important evidence in a trial of this sort, and care must be exercised to establish the essential links in the chain of evidence relied on to identify the blood analyzed as being the blood taken.

" '* * * It is rudimentary that a specimen taken from a human body for the purpose of analysis must be identified before such specimen or any analysis made from it attains standing as evidence of the condition of the person whose conduct is questioned. Without identification, there is no connection between the two. * * *' *McGowan* v. *Los Angeles*, 100 Cal. App. (2d) 386, 223 P. (2d) 862, 21 A. L. R. (2d) 1206, at 1212.

"In proving identity legal presumptions may of course be relied on unless rebutted, *e.g.*, that articles regularly mailed are delivered in substantially the same condition in which they were sent, *Schacht* v. *State*, 154 Neb. 858, 50 N. W. (2d) 78, 80; and that an analysis made by an official in the regular course of his duties was properly made, 20 Am. Jur., Evidence, §§ 170-1, pp. 174-8. But where the substance analyzed has passed through several hands, the evidence must

not leave it to conjecture as to who had it and what was done with it between the taking and the analysis. See generally *Brown* v. *State*, 156 Tex. Cr. 144, 240 S. W. (2d) 310; *American Mut. &C Co.* v. *Industrial Accident Commission*, 78 Cal. App. (2d) 493; 178 P. (2d) 40; *Novak* v. *District of Columbia*, 82 App. D. C. 95, 160 F. (2d) 588; *State* v. *Romo*, 66 Ariz. 174, 185 P. (2d) 757; Annotation, *supra*, 21 A. L. R. (2d) 1216, at 1220 ff."

Measured by this test, the evidence does not establish beyond a reasonable doubt that the analyzed blood was in fact Newton's blood.

The city attorney asserts that the alcoholic content shown by the drunk-o-meter test was so nearly identical with that found by the analysis that the former can and should be resorted to in aid of the blood's identification. We cannot accept this near coincidental result found by two wholly disconnected and dissimilar tests, which are admittedly unequal in scientific accuracy, as of probative value to identify the subject matter of the tests. To do so leaves too much, maybe all, to chance and hazard to meet the demands of acceptable proof.

No reliable evidence of probative value has been offered to establish beyond a reasonable doubt that the blood extracted from Newton and then labeled in some manner was in fact the blood that was analyzed except that the vial obtained by Dr. Kaye from the safe bore accused's name. At best the meager proof leaves too much to conjecture, speculation and assumption to prove beyond a reasonable doubt that the analyzed blood was that extracted from accused.[2]

The motion to strike out and exclude Dr. Kaye's findings should have been sustained. This analysis showing the alcoholic content of the blood was undoubtedly prejudicial to accused and its admission without sufficient identification requires that the judgment be reversed and a new trial awarded.

No specific objection was made to that part of Dr. Kaye's testimony which says that in his opinion the person whose blood he analyzed was intoxicated "to a degree where he was not fit to operate an automobile." Yet upon a retrial he should not be allowed to express his opinion upon accused's *fitness "to operate an automobile."* To do so goes beyond giving expert testimony as to degrees of intoxication and invades the province of the jury.

*Reversed and Remanded.*

---

[2] For recent legislation on the subject, not, however, affecting this case, see Acts 1956, ch. 557, p. 912.