# Richmond

ROGER ALBERTUS LUTZ, JR. v. CITY OF RICHMOND.

March 9, 1964.

Record No. 5688.

Present, All the Justices.

*Robert R. Merhige, Jr. (George F. Tidey; Charles W. Sydnor; Bremner, Merhige, Byrne, Montgomery & Baber,* on brief), for the plaintiff in error.

*James B. Wilkinson, Assistant Commonwealth's Attorney (J. E. Drinard, City Attorney; O. C. Thacker, Jr., Assistant City Attorney,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Roger Albertus Lutz, Jr., hereinafter referred to as defendant, was convicted in the Traffic Court of the City of Richmond on a warrant charging him with the violation of a city ordinance which prohibits any person from operating a motor vehicle while under

the influence of intoxicants or drugs. § 22-98, Richmond City Code of 1957[1], as amended. He appealed the conviction to the Hustings Court of the City of Richmond, where the case was tried by the court without the intervention of a jury. On a plea of not guilty he was found guilty as charged. His punishment was fixed at a fine of $200 and by confinement in jail for a term of ninety days. The execution of the jail sentence was suspended on condition that he keep the peace and be of good behavior for the ensuing twelve months. From this judgment we granted defendant a writ of error.

On December 9, 1962, at approximately 2:15 a.m. defendant was driving a station wagon without lights on West Grace street in Richmond. Police officers experienced difficulty in their efforts to stop defendant's vehicle. After defendant alighted from his automobile he "fell up against it". He "had a very strong odor of alcohol; his eyes were blood-shot; and his speech was slurred". When given the "finger to nose test, he hit the side of his nose" and "had difficulty in picking up a coin." He told the officers he had been "drinking bourbon at a party". The defendant was placed under arrest for operating his car while under the influence of intoxicants and was advised of his right to have his blood tested for alcoholic content. The defendant consented to take the test and he was carried to the Medical College of Virginia for that purpose within two hours of his arrest.

There twenty c.c. of blood were drawn from him. Ten c.c. were placed in a vial and delivered to B. W. Hughes, one of the arresting police officers, who dropped it in the "slot at the [Chief] Medical Examiner's office" for examination by the State Toxicologist or an assistant toxicologist. Another vial containing a portion of the blood was delivered to defendant, who testified that he kept the vial of blood in a refrigerator, as he was instructed to do, until he delivered it to St. Elizabeth's Hospital, an approved laboratory, on the morning of December 11, for testing. The hospital forwarded the vial together with its certificate directly to the clerk of the Traffic Court.

The city introduced in evidence the certificate attested by the Chief Medical Examiner, hereinafter called Chief Medical Examiner's certificate. The vial of blood furnished his office was not introduced.

---

[1] "Sec. 22-98. It shall be unlawful for any person to drive or operate any automobile or other motor vehicle, car, truck, engine or train while under the influence of alcohol, brandy, rum, whisky, gin, wine, beer, lager beer, ale, porter, stout or any other liquid, beverage or article containing alcohol or while under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature."

The certificate showed that ten c.c. of defendant's blood were received at the Chief Medical Examiner's office on *December 8*, at 9 a.m., and that the blood contained 0.24% alcohol by weight.

The certificate or blood alcohol report of St. Elizabeth's Hospital introduced by defendant was dated December 17, and it showed that the vial contained eight c.c. of blood extracted by Dr. C. W. Jansing on December 9, at 2:50 a.m., and that the "container seal when received had not been broken or otherwise tampered with." It stated: "Results: Blood clotted so was not satisfactory for blood alcohol test." The vial of blood provided defendant was also introduced. The label on it stated that the blood of defendant was taken by Dr. Jansing on December 9, at 2:50 a.m.

After the city had introduced the Chief Medical Examiner's certificate the defendant moved the court to exclude it and dismiss the case on the ground that the certificate showed the blood examined was taken on December 8, while the evidence showed defendant was not arrested and did not give blood for testing until the next day, December 9. The motion was overruled. At the conclusion of all the evidence the motion to dismiss was renewed on the above ground and further because the requirements of § 18.1-55, Virginia Code 1950, as amended, (22-99.1, Richmond City Code of 1957, as amended) had not been met. Such failure, he contended, "shall be deemed a reasonable doubt of defendant's guilt", as provided by the city ordinance and in the State statute.

The defendant contends that the trial court erred in overruling his motion to dismiss because (1) the Chief Medical Examiner's certificate introduced by the city shows that defendant's blood was taken on December 8, whereas the evidence conclusively shows that he was not arrested and did not give his blood until December 9, and (2) he was not able to offer evidence in his behalf, through no fault of his own, since the blood in the vial given him clotted and no test for alcoholic content could be made.

The pertinent ordinance, sometimes called the "Implied Consent Law", is § 22-99.1, Richmond City Code of 1957, as amended, which parallels § 18.1-55, Virginia Code 1950, as amended. It reads in part as follows:

"22-99.1 (c) * * * The blood sample shall be placed in each of two sealed containers provided by the Chief Medical Examiner. Upon completion of taking of the sample, the containers shall be resealed in the presence of the accused after calling the fact to his attention. The containers shall be especially equipped with a sealing device,

sealed so as not to allow tampering, labelled and identified showing the person making the test, the name of the accused, the date and time of taking. One sample shall then be delivered by the person who withdrew it to the police officer for transporting or mailing to the Chief Medical Examiner; and the other sample shall be delivered to the person accused, * * * and the accused * * * shall deliver by transporting or by mailing the same to a laboratory supervised by a pathologist or a laboratory approved by the State Health Commissioner * * * . Upon receipt of the blood sample, the Chief Medical Examiner shall cause it to be examined for alcoholic content by the State Toxicologist or by an Assistant State Toxicologist, who, upon the completion of such examination shall execute a certificate, *which certificate shall indicate the name of the accused, the date, time and by whom the same was received and examined,* a statement that the container seal had not been broken or otherwise tampered with, that the container was one provided by the Chief Medical Examiner and a statement of the alcoholic content of the sample. The certificate attached to the container shall be returned to either the police officer making the arrest, * * *; and the certificate attached to the container forwarded by * * * the accused shall be returned to the clerk of the court in which the matter will be heard, and such certificate shall be admissible in evidence when attested by the pathologist or by the supervisor of the laboratory approved by the State Health Commissioner. (Emphasis added.)

\* \* \* \* \*

"(f) * * * [W]hen the person arrested within two hours of the time of his arrest requests or consents to the taking of a blood sample for chemical analysis, if the result of such chemical analysis of the blood sample taken is not received in evidence at the trial for any reason whatever, including but not limited to the failure on the part of any person, except the person arrested, to comply strictly with every provision of this section, then the right of the person arrested shall be deemed to have been prejudiced, and he shall be found not guilty of any offense under section 22-98 and his license shall not be revoked under any provision of this section.

"In the event that the city fails to comply with any of the requirements of this section, then this failure shall be deemed a reasonable doubt of defendant's guilt."

The undisputed evidence shows that defendant was arrested on December 9, at approximately 2:15 a.m. and that he was taken to

the Medical College of Virginia where his blood was extracted at 2:50 a.m. on the same day for the purpose of ascertaining its alcoholic content. Officer Hughes testified that he thereafter placed the vial containing defendant's blood in the "slot" at the Chief Medical Examiner's office. Section 22-99.1(c) of the Richmond City Code, *supra*, requires that upon receipt of the blood sample the Chief Medical Examiner shall cause it to be examined and a certificate to be executed which "shall indicate the name of the accused, the date, time and by whom the same was received and examined". The certificate attested by him and introduced by the city showed that the blood analyzed was received at the Chief Medical Examiner's office on December 8, at 9 a.m., which was the day before the arrest was made. Clearly defendant's sample of blood could not have been received before it was actually taken. The failure to identify the blood as having been taken at the time of the commission of the offense charged rendered the analysis inadmissible in evidence, and hence, as required by the ordinance, "he shall be found not guilty of any offense under section 22-98 * * *."

The city argues that the date on the Chief Medical Examiner's certificate was a typographical error. Perhaps that was true, but it was incumbent on the city to prove that it was. No such proof was offered.

In *Newton* v. *City of Richmond*, 198 Va. 869, 96 S. E. 2d 775, one of the issues involved was whether the evidence identifying the blood was sufficient to show beyond a reasonable doubt, that the sample analyzed was blood extracted from the defendant. Dr. Kaye, who was State Toxicologist, testified as to the analysis of blood from a vial that bore defendant's name. He stated that he took the sample of blood from the safe at the hospital, but did not know who handled it before he took possession. We held that defendant's motion to exclude Dr. Kaye's testimony should have been sustained and reversed the judgment of conviction. In so doing we stated "At best the meager proof leaves too much to conjecture, speculation and assumption to prove beyond a reasonable doubt that the analyzed blood was that extracted from accused." 198 Va. at page 875.

Here, the unexplained discrepancy between the date the analyzed blood was received in the Chief Medical Examiner's office and the later date when defendant's blood was actually extracted leaves too much to conjecture and speculation to prove beyond a reasonable doubt that the analyzed blood was that extracted from defendant. The ordinance itself calls for a strict compliance with every provision

in it. Otherwise, it states, the accused shall be found not guilty of the offense. We conclude that the judgment of conviction must be reversed and the case dismissed.

Accordingly, the judgment appealed from is reversed and the case is dismissed.

*Reversed and dismissed.*