## Richmond

### ELWOOD COOLIDGE KYHL v. COMMONWEALTH OF VIRGINIA.

April 27, 1964.

Record No. 5734.

Present, All the Justices.

*John Alexander* (*Martin & Alexander*, on brief), for the plaintiff in error.

*R. D. McIlwaine, III, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Elwood Coolidge Kyhl, sometimes referred to as defendant, was convicted in the Fauquier County Court on a warrant charging him with operating "a motor vehicle over the public highway while under the influence of alcoholic beverages" in violation of Code, § 18.1-54. He appealed the conviction to the Circuit Court of Fauquier County, where the case was tried by the court without a jury. On a plea of not guilty he was found guilty as charged and his punishment was fixed at a fine of $300 and by confinement in jail for a term of 30

days. The execution of the jail sentence was suspended on condition that he be of good behavior for the ensuing year. From this judgment we granted defendant a writ of error.

On January 27, 1963, defendant was observed by two State troopers driving a station wagon "in a very haphazardly manner" on Route No. 17 north of Warrenton, Virginia. The officers stopped defendant's vehicle after following it for a considerable distance. They "detected a very strong odor of intoxicants on Mr. Kyhl's breath" and noticed that he was unsteady on his feet. He had a "far-away stare" in his eyes and he had difficulty with his speech. He was placed under arrest at approximately 4:20 p.m. for operating his motor vehicle while under the influence of intoxicants and was advised that he was entitled to have his blood tested for alcoholic content. Kyhl consented to take the test and he was carried by trooper R. W. Willis, one of the arresting officers, to Fauquier Hospital in Warrenton for that purpose. They arrived there 15 minutes after the arrest was made.

Mrs. Hazel Anderson, a registered professional nurse employed by the hospital, extracted 20 c.c. of blood from defendant within 15 minutes after his arrival. Defendant's arm was sterilized with "Zephiran chloride solution", which Mrs. Anderson said to her knowledge contains no alcohol or trace of alcohol. No substance was used by her to sterilize the needle with which defendant's blood was extracted. She stated that she used "a presealed, disposable container, which is used one time and then discarded. And this is pre-sealed (sic) and sterilized at the factory, not at the hospital" On cross-examination Mrs. Anderson admitted that she had never been to the factory where the needles were packaged and that she did not know if they were sterilized.

Over the objection and exception of defendant the trial court admitted into evidence the certificate or blood alcohol report attested by the Assistant Chief Medical Examiner. It showed that the blood extracted from defendant contained 0.29% alcohol by weight.

While the assignments of error pose several questions, in the view we take of the case, it is only necessary to consider defendant's contention that the trial court erred in admitting in evidence the certificate attested by the Assistant Chief Medical Examiner because the Commonwealth's evidence failed to show that the provisions of Code, § 18.1-55 had been met since the instrument used to extract defendant's blood was not cleansed or sterilized by the nurse.

The Commonwealth contends that the record discloses full compliance with the statute and contains no evidence tending to show noncompliance. The Commonwealth also takes the position that "in the absence of proof to the contrary, it is presumed as a matter of law that officers and individuals engaged in the withdrawal and disposition of the instant defendant's blood sample properly discharged their duties and faithfully performed all the obligations imposed upon them by law in this connection."

The pertinent provisions of Code, § 18.1-55, called the "Implied Consent Law", follow:

"(c) Only a physician, registered professional nurse or graduate laboratory technician, *using some type of a cleanser or sterilizer for the instruments used* and for the part of the body from which the blood is taken, other than alcohol or other substance which might in any way affect the accuracy of the test, shall withdraw blood for the purpose of determining the alcoholic content therein; * * *. (Italics supplied.)

*       *       *       *       *

"(f) * * * [W]hen the person arrested within two hours of the time of his arrest requests or consents to the taking of a blood sample for chemical analysis, if the results of such chemical analysis of the blood sample taken is not received in evidence at the trial for any reason whatever, including but not limited to the failure on the part of any person, except the person arrested, to comply strictly with every provision of this section, then the rights of the person arrested shall be deemed to have been prejudiced, and he shall be found not guilty of any offense under § 18.1-54, * * *.

"In the event that the Commonwealth fails to comply with any of the requirements of this section, then this failure shall be deemed a reasonable doubt of defendant's guilt."

Under the statute, Mrs. Anderson, a registered professional nurse, was qualified to extract defendant's blood for analysis. She stated that she used "Zephiran chloride solution" to sterilize defendant's arm before the needle was inserted. However, she did not cleanse or sterilize the needle used in extracting the blood. She was called as a witness for the Commonwealth and was asked on direct examination:

"Q. Any alcohol or any substance containing alcohol used to sterilize the needle that you used in withdrawing the blood in this case?

"A. No sir. We use a presealed, disposable container, which is

used one time and then discarded. And this is pre-sealed (sic) and sterilized at the factory, not at the hospital."

On cross-examination she had this to say:

"Q. Mrs. Anderson, have you ever been in a factory where these needles are packaged?

"A. No sir, I have not.

"Q. So you don't know whether or not they are sterilized?

"A. I can't swear that those needles are sterilized, Mr. Alexander.

"Q. You don't know if they are sterilized, if they are?

"A. No sir."

Code, § 18.1-55(c), *supra*, requires the using of "some type of a cleanser or sterilizer for the instruments used * * *, other than alcohol or other substance which might in any way affect the accuracy of the test," in extracting blood for analysis. The statute does not say that this must take place in the presence of the accused, but it is manifest from Mrs. Anderson's testimony that neither she nor anyone else at the hospital complied with this prerequisite procedure. Moreover, she did not know whether the needle was sterilized. Since this issue was raised it cannot be presumed that some unknown factory properly cleansed or sterilized the needle.

As we stated in *Lutz* v. *City of Richmond*, 205 Va. 93, 97-8, 135 S. E. 2d 156, the statute "itself calls for a strict compliance with every provision in it. Otherwise, it states, the accused shall be found not guilty of the offense." Here, the absence of evidence showing that a cleanser or sterilizer was used for the needle before extracting defendant's blood rendered the certificate attested by the Assistant Chief Medical Examiner stating the results of the blood analysis inadmissible in evidence, and hence, *as required by the statute*, "he shall be found not guilty of any offense under § 18.1-54 * * *."

Accordingly, the judgment appealed from is reversed and the case is dismissed.

*Reversed and dismissed.*