# Richmond

CLAUDE ROGER ROWLAND V. CITY OF RICHMOND.

April 27, 1964.

Record No. 5743.

Present, All the Justices.

*Leonard A. Paris* (*Lee R. Gordon; White & Roberts*, on brief), for the plaintiff in error.

*Roland B. Kelley, Assistant Commonwealth's Attorney* (*J. E. Drinard, City Attorney; O. C. Thacker, Jr., Assistant City Attorney*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

As a consequence of his conviction of operating a motor vehicle under the influence of intoxicants Claude R. Rowland, the defendant, appealed the judgment to this court.

The defendant pleaded not guilty to the offense and a jury

trial was waived. At the conclusion of the city's evidence, defendant's motion to strike the evidence was overruled. At the conclusion of all the evidence defendant was found guilty as charged in the warrant. His punishment was fixed at a fine of $200 and by confinement in jail for 90 days, which term was suspended on condition that he be of good behavior for the ensuing 12 months. Whereupon defendant moved "to set aside the judgment of the Court as being contrary to the law and evidence". This motion was overruled.

The testimony certified to us is in narrative form and may be summarized as follows:

On January 29, 1963, Aubrey T. Austin, a city police officer, received a call to proceed to "the corner of Claremont and Brook Road to investigate an accident." Upon arrival there at approximately 8:12 p. m. he observed that defendant's vehicle had collided with a parked car. He found defendant seated in an automobile occupied by two park police officers. Defendant admitted that he was the operator of the moving vehicle but did not know the time the accident occurred. Officer Austin placed a call for Sergeant V. C. Iacopinelli "since the defendant appeared to be drinking". He arrived at the scene about 8:45 p.m.

According to officer Austin, defendant stated that he had drunk a fifth of whiskey since 7:30 p.m. but had drunk "nothing since the accident." Austin said that Sergeant Iacopinelli attempted to give Rowland coordination tests but he "could not walk well enough." The defendant was informed that he was entitled to have his blood tested for alcoholic content and he "readily consented." Officer Austin carried Rowland to the Medical College of Virginia where "the doctor refused to extract any blood from the defendant since the defendant's signature on the hospital's 'permission' form was illegible."

Sergeant Iacopinelli testified that defendant "had a strong odor of alcohol on his breath, and a sleepy look in his eyes"; that defendant told him he had drunk a fifth of whiskey and two martinis since 7:30 p.m. and had drunk nothing since the accident, and that defendant "appeared to be coherent." He further testified that he attempted to give Rowland coordination tests but "defendant could not step away from the car to walk", and that defendant "consented" to have his blood tested.

The defendant, who was a school teacher, stated that on the day of the accident he was at home suffering from "cervical arthritis";

that at approximately 2:00 p.m. he drank one and a half ounces of rum; that around 4:00 p.m. a student and his mother called at his home and remained until 5:30 p.m.; that his mother (Mrs. Rowland) prepared supper but he did not eat any of it, and he had consumed no food during the day.

"He said the pain in his shoulder was so bad that he lay down on the living room sofa until 6:30 P. M. He told his mother that he was going to the drug store for medicine. He drove to the drug store, a few blocks from his home, ordered the prescription, but since the pain in his arm and shoulder hurt so bad he didn't wait for it to be filled. He started home with his arm and shoulder hurting so bad that he must have blacked out."

The defendant further stated that he did not "remember much" until the next morning; that he immediately called his doctor to make arrangements for hospitalization; that on February 2 he was admitted to a hospital and remained there for eight days receiving treatment for his arthritic condition; that "he did not drink as much as a fifth of whiskey in a year"; that his signature was not ordinarily illegible but since he had arthritis "he sometimes has trouble in writing."

Mrs. O. M. Rowland, defendant's mother, testified that her son "had been feeling bad all day, complaining of arthritis"; that she was with him on the day of the accident until 7:00 p.m.; that he did not eat any food during that time; that she did not see him "drink anything", and that for three days thereafter defendant "acted strangely, stumbled around, didn't eat much, and appeared to be dizzy." She also corroborated his statement that he was hospitalized on February 2 for a period of eight days.

The defendant contends that his rights were "prejudiced when the attending physician refused to withdraw a blood sample from him for chemical analysis to determine the alcoholic content thereof." He also challenges the sufficiency of the evidence to support a finding that he was under the influence of intoxicants while operating the motor vehicle at the time of the accident.

Code, § 18.1-55[1], often referred to as the "Implied Consent Law", reads in part:

"(b) Any person * * * who operates a motor vehicle upon a public highway of this State * * * shall be deemed thereby to have

---

[1] Section 18.1-55 was repealed by the 1964 General Assembly and § 18.1-55.1, which made substantial changes, was enacted in lieu thereof, effective July 1, 1964.

agreed as a condition of such operation to consent to, and *shall be entitled to,* have a sample of his blood taken for a chemical test to determine the alcoholic content thereof if he is arrested for * * * [driving under the influence of intoxicants] within two hours of the alleged offense * * * *It then shall be the duty of the arresting officer* * * * forthwith to carry the person arrested to a person qualified under this section to withdraw the blood sample. (Emphasis added.)

\* \* \* \* \*

"(f)  * * * [W]hen the person arrested * * * consents to the taking of a blood sample for chemical analysis, if the result of such chemical analysis of the blood sample taken is not received in evidence at the trial for any reason whatever, including but not limited to the failure on the part of any person, except the person arrested, to comply strictly with every provision of this section, *then the rights of the person arrested shall be deemed to have been prejudiced, and he shall be found not guilty* of any offense under § 18.1-54, or of any similar ordinance of any county, city or town [driving under the influence of intoxicants] * * *." (Emphasis added.)

Here, the uncontradicted evidence shows that defendant "appeared to be coherent"; that he "readily consented" to have his blood tested for alcoholic content, and that the doctor at the Medical College of Virginia refused to extract any of his blood since his "signature on the hospital's 'permission' form was illegible." The doctor did not testify in the court below nor was the "permission form" introduced in evidence.

The city attempts to explain the doctor's refusal to extract defendant's blood by arguing in its brief that the "only reasonable inference which can be drawn is that the doctor concluded, after observing the defendant, that he was not sufficiently lucid to give his consent." This inference, it contends, is supported by defendant's statement that when he started home from the drug store before the accident "he must have blacked out", and did not "remember much" until the next morning. The ready answer to this argument is that it is conjectural and too speculative. The doctor was not called as a witness and officer Austin who was present at the hospital did not testify that this was the reason given by the doctor for refusing to extract the blood. The only evidence in the record before us pertaining to the incidents at the hospital is officer Austin's statement

that the doctor refused to extract any blood since his "signature on the hospital's 'permission' form was illegible."

Under the statute defendant, having consented to the taking of a blood sample for chemical analysis to determine its alcoholic content, was entitled to have the test made. When the doctor refused to extract the blood the officer's duty in this respect did not end. The defendant should have been taken forthwith to another qualified person to withdraw the blood sample.

Since the chemical analysis of defendant's blood was not made and received in evidence at the trial, through no fault of his own, then according to the statute his rights "shall be deemed to have been prejudiced, and he shall be found not guilty of any offense under § 18.1-54 [driving under the influence of intoxicants] * * *."

Thus, under the evidence before us, we are compelled by § 18.1-55 to reverse the judgment of conviction and dismiss the case because the provisions of this statute were not complied with. See *Lutz* v. *City of Richmond*, 205 Va. 93, 97-8, 135 S. E. 2d 156; *Kyhl* v. *Commonwealth*, (this day decided), 205 Va. 240, 243, 135 S. E. 2d 768.

For the reasons stated, the judgment appealed from is reversed and the case is dismissed.

*Reversed and dismissed.*