# Richmond

## James M. Lawrence v. City of Norfolk.

April 27, 1964.

Record No. 5749.

Present, All the Justices.

*Alan S. Mirman*, for the plaintiff in error.

*J. Carroll Melton, II, Assistant City Attorney (Leonard H. Davis, City Attorney*, on brief), for the defendant in error.

Snead, J., delivered the opinion of the court.

James M. Lawrence, defendant, was awarded a writ of error from a conviction of driving a motor vehicle while under the influence of alcohol in violation of an ordinance of the city of Norfolk. § 29-43, Norfolk City Code, 1958.

The defendant pleaded not guilty to the offense and a jury trial was had. At the conclusion of the city's evidence and at the con-

clusion of all the evidence defendant's motions to strike the city's evidence were overruled. Upon finding defendant guilty as charged the jury fixed his punishment at a fine of $200. Defendant's motion to set aside the verdict as being contrary to the law and the evidence was overruled and judgment was entered according to the verdict.

On January 20, 1963, just before midnight Lawrence, the defendant, was observed by city police officers W. H. Morton and D. C. Coleman driving his vehicle through an intersection in Norfolk in the face of a red traffic light. The officers signaled for Lawrence to stop his car. He was requested to alight from it and in so doing he "fell against Officer Coleman", who had opened the door for him. He "was very unsteady on his feet" and "could hardly stand up." Lawrence was carried to the police station where Sergeant E. W. Farr administered sobriety tests.

Sergeant Farr testified that Lawrence's walk was "wobbly" and he could not walk a straight line, although he was able to stand on one foot successfully; that he had a strong odor of alcohol on him and his speech was "a little on the thick side"; that he was able to give the correct time, and that he could not satisfactorily draw a circle and an "X" within a square. As a result of the sergeant's observations Lawrence was charged with the offense of operating a motor vehicle while under the influence of alcohol. Lawrence "readily agreed" to have his blood tested to determine its alcoholic content.

Within two hours after his arrest Dr. H. G. White, Jr., a qualified physician connected with Norfolk General Hospital, extracted 20 c.c. of blood from defendant's arm for chemical analysis in the presence of the police officers. He placed the blood in two tubes containing sodium fluoride, an anti-coagulant and a preservative, provided by the Chief Medical Examiner, corked the tubes, and filled in the blank spaces on the label glued to each tube identifying the blood. The name and address of the accused, the doctor's name, the date and hour the blood was extracted were inscribed thereon. One tube was placed in a blue box and the other was placed in a brown box which were also provided by the Chief Medical Examiner. Both boxes had metal clamps and gummed flaps and they were sealed by this means in the presence of defendant after calling the fact to his attention. The blue box was then given to defendant and the brown box was delivered to officer Morton. On the brown box was printed: "To: Office of Chief Medical Examiner * * * Norfolk,

Virginia" and a space for the sender to affix his name and address. Officer Morton wrote his name and address in this space and deposited the box at the Chief Medical Examiner's office. A chemical analysis of the blood sample was made by a State toxicologist and the required certificate was executed.

The sole question for us to decide is whether the trial court erred in admitting in evidence the blood sample, the certificate attested by the Assistant Chief Medical Examiner showing the alcoholic content of defendant's blood and testimony relating thereto. Defendant contends that such evidence was inadmissible because the city did not comply with the ordinance with respect to the sealing and labelling of the blood samples. He does not contend that anyone tampered with the city's blood sample.

The applicable ordinance is § 29-44 of the Norfolk City Code, 1958, as amended, the so-called "Implied Consent Law". It parallels Virginia Code, § 18.1-55 and reads in part as follows:

"(c) Only a physician * * * using some type of a cleanser or sterilizer for the instruments used and for the part of the body from which the blood is taken, other than alcohol or other substance which might in any way affect the accuracy of the test, shall withdraw blood for the purpose of determining the alcoholic content therein * * *. The blood sample shall be placed in each of two sealed containers provided by the chief medical examiner. Upon completion of taking of the sample, the containers shall be resealed in the presence of the accused after calling the fact to his attention. *The containers shall be especially equipped with a sealing device, sealed so as not to allow tampering,* labelled and identified showing the person making the test, the name of the accused, the date and time of taking. One sample shall then be delivered by the person who withdrew it to the police officer for transporting or mailing to the chief medical examiner; and, the other sample shall be delivered to the person accused * * *. Upon receipt of the blood sample, the chief medical examiner shall cause it to be examined for alcoholic content by the state toxicologist or by an assistant state toxicologist, who, upon the completion of such examination shall execute a certificate which certificate shall indicate the name of the accused, the date, time and by whom the same was received and examined, a statement that the container seal had not been broken or otherwise tampered with, that the container was one provided by the chief medical examiner

and a statement of the alcoholic content of the sample. * * *. (Emphasis added.)

\* \* \* \* \*

"(f) * * * [W]hen the person arrested within two hours of the time of his arrest requests or consents to the taking of a blood sample for chemical analysis, if the result of such chemical analysis of the blood sample taken is not received in evidence at the trial for any reason whatever, including but not limited to the failure on the part of any person, except the person arrested, to comply strictly with every provision of this section, then the rights of the person arrested shall be deemed to have been prejudiced, and he shall be found not guilty of any offense under section 29-43 of this Code, * * *.

"In the event that the state or city fails to comply with any of the requirements of this section, then this failure shall be deemed a reasonable doubt of defendant's guilt."

The city admits in its brief that unless every provision of § 29-44, *supra*, was complied with the certificate attested by the Assistant Chief Medical Examiner showing the results of the chemical analysis was not admissible in evidence. However, the city insists that such requirements have been met and that the certificate was properly admitted in evidence.

The defendant takes the position that the word "containers" employed in subsection (c) of the ordinance are the tubes in which the blood sample is placed and not the boxes in which the tubes are subsequently placed. He points out that the ordinance requires the containers "shall be especially equipped with a sealing device, sealed so as not to allow tampering, labelled and identified showing the person making the test, the name of the accused, the date and time of taking"; that the tubes used were labelled but the boxes were not labeled; that the boxes were sealed, but the tubes were not "sealed so as not to allow tampering"; and that the tubes were merely "corked". He argues that if the tubes are "the containers" the city failed to comply with the provisions of § 29-44[1] since they were not sealed so as not to allow tampering and if the boxes are "the containers" the city failed to comply because they were not labelled as required. Thus, he says that in accordance with subsection (f) of the ordinance such failure to comply by the city "shall be deemed a reasonable doubt" of his guilt, and his rights "shall be deemed to have been prejudiced and he

---

[1] The Statute, § 18.1-55, which § 29-44 of Norfolk City Code parallels, was repealed by the 1964 General Assembly and § 18.1-55.1, which made substantial changes, was enacted in lieu thereof, effective July 1, 1964.

shall be found not guilty of any offense under section 29-43 * * *."

Our duty is to interpret statutes and ordinances as enacted by legislative bodies and not to rewrite them. We are not judges of the wisdom of legislation. That is purely a legislative matter.

As has been stated the ordinance requires that "the blood sample shall be placed in each of two sealed containers provided by the chief medical examiner. Upon completion of taking of the sample, the containers shall be resealed * * * The containers shall be especially equipped with a sealing device, sealed so as not to allow tampering, labelled and identified showing the person making the test, the name of the accused, the date and time of taking."

It is evident that "the containers" referred to in the ordinance means the glass tubes or vials and not the boxes. Here the blood sample was put in two tubes and resealed by replacing the corks in the tubes. But this was not enough because the mere corking of the tubes containing the blood would not meet the requirement of sealing "so as not to allow tampering." Ramon M. Morano, a State toxicologist; Marvin T. Hurley, administrative assistant in the Chief Medical Examiner's office, and officer Coleman when exhibited the city's tube containing defendant's blood testified that by examining it they could not determine whether or not the cork had been removed from the tube. It is reasonable to say that it could have been removed a number of times without detection.

It is true that the tubes containing the blood sample were placed in boxes which were sealed. Assuming, *arguendo*, that they are "the containers" referred to in the ordinance, they were not labelled which the ordinance requires. No identification at all was put on the box by the doctor who extracted the blood. The labelling was on the tubes. Thus we see the provisions of the ordinance were not followed.

The ordinance "calls for a strict compliance with every provision in it. Otherwise, it states, the accused shall be found not guilty of the offense." *Lutz* v. *City of Richmond*, 205 Va. 93, 97-8, 135 S. E. 2d 156; *Kyhl* v. *Commonwealth* (this day decided), 205 Va. 240, 243, 135 S. E. 2d 768.

We hold that the trial court erred in admitting in evidence the blood sample, the certificate attested by the Assistant Chief Medical Examiner and testimony relating thereto which showed that defendant's blood sample contained 0.16% alcohol by weight. That being the case we have no alternative under the ordinance but to reverse the judgment and dismiss the case.

*Reversed and dismissed.*