## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

EARL DAVID CREWS v. COMMONWEALTH OF VIRGINIA.

October 12, 1964.

Record No. 5863.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle and Carrico, JJ.

*Philip M. Sadler* and *Robert J. Ingram* (*Gilmer, Harman & Sadler*, on brief), for the plaintiff in error.

*R. D. McIlwaine, III, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

Earl David Crews, the defendant, was convicted by the trial court, trying the case without a jury, of operating a motor vehicle while under the influence of intoxicants (Code, § 18.1-54, 1960 Repl. Vol.). His punishment was fixed at a fine of $200.00 and confinement in jail for a period of sixty days, the jail sentence being suspended during his good behavior for one year. We granted the defendant a writ of error.

The sole question in the case is whether the trial court erred in admitting into evidence the results of the chemical analysis of the defendant's blood sample.

The evidence shows that on the night of April 13, 1963, Harry J. Hughes, Jr., a deputy sheriff of Pulaski County, observed a vehicle being operated in an erratic manner on Robinson Track Road. He caused the vehicle to be stopped and discovered the defendant to be its operator. The deputy detected that the defendant had the odor of alcohol on his breath, that he was unsteady on his feet and that he was "thick-tongued."

The defendant was arrested and upon being advised of his right to a blood test, at first refused but later consented to take such a test. He was taken to Pulaski Hospital where, within two hours of the time of his arrest, a sample of blood was withdrawn from his arm by Mrs. Jean Alderman, a registered nurse.

An analysis of the sample, made by the office of the Chief Medical Examiner in Richmond, disclosed that the defendant's blood contained 0.22 per cent by weight of alcohol.

Mrs. Alderman, in sterilizing the defendant's arm, preparatory to withdrawing his blood, had used ether. It is this use of ether, the defendant contends, which rendered inadmissible the results of his blood test.

The defendant relies on Code, § 18.1-55 (c), 1960 Repl. Vol., 1962 Supp., as it read on the date of his arrest,[1] which required that the prescribed persons withdrawing blood, for chemical analysis in driving under the influence cases, use some type of cleanser or sterilizer, ". . . for the part of the body from which the blood is taken, other than alcohol or other substance which might in any way affect the accuracy of the test." The defendant argues that ether is a, "substance which might in any way affect the accuracy of the test" and was, therefore, excluded from use as a sterlizing agent in the chemical analysis now under consideration.

It will be noted that alcohol was the only substance specifically prohibited by Code, § 18.1-55(c) from use as a cleanser or sterilizer. We are of opinion that it was a question of fact whether the use of some other substance, "might in any way affect the accuracy of the test." The crucial inquiry in this case, therefore, is whether the

---

[1] Code, § 18.1-55 was repealed by the General Assembly at its 1964 session and Code, § 18.1-55.1 was enacted to prescribe the procedures to be followed in chemical tests to determine the amount of alcohol in blood in driving under the influence cases.

evidence supports the trial court's finding that the use of ether on the defendant's arm did not adversely affect the admissibility of the results of the test here involved.

Mrs. Alderman, the registered nurse who withdrew the blood from the defendant's arm, testified as a witness for the Commonwealth. She stated that the use of ether would not, "in any way affect the blood stream of the person from whom" blood is withdrawn. She admitted, on cross-examination, that ether is a derivative of alcohol, but insisted that ether "evaporates immediately" and could not, "get into the veins."

Gerald V. Clark, chief laboratory technician at Pulaski Hospital, was called as a witness for the Commonwealth. He testified that if ether, "were allowed to get into the sample, it would certainly have the same effect as that amount of alcohol." He said, however, in the context of driving under the influence cases, that ether is, "in the approved category" as a sterilizer. He explained that ether evaporates "almost instantly" and that, "if it's evaporated, it couldn't get into the blood stream." He further stated that if the person withdrawing blood were to swab the patient's arm with ether and then pick up "the needle", it would not be possible to place "the needle" on the arm before the ether would evaporate. Finally, Mr. Clark testified that, "the very purpose of using ether is to avoid contaminating the blood sample in any way."

No evidence was introduced by the defendant to contradict or counteract the testimony given by Mrs. Alderman and Mr. Clark.

We are aware that the statute here involved, as it read on the date of the defendant's arrest, required strict compliance with its terms, otherwise the accused, "shall be deemed to have been prejudiced, and he shall be found not guilty." Code, § 18.1-55 (f), 1960 Repl. Vol., 1962 Supp.; *Lutz* v. *City of Richmond*, 205 Va. 93, 97, 98, 135 S. E. 2d 156; *Kyhl* v. *Commonwealth*, 205 Va. 240, 243, 135 S. E. 2d 768.

The statute under consideration was a technical one and its technicalities had to be observed. But, in determining whether the prescribed steps have been followed, the evidence must, nonetheless, be given a reasonable view. When that is done, it is manifest that the trial court was justified in finding that the use of ether on the defendant's arm did not render inadmissible the results of his blood test.

The trial judge stated, "There is ample evidence in this case to show a full and complete compliance with the statute enacted by the Legislature." That conclusion, and the conviction that followed, are supported by the evidence. Accordingly, the judgment will be

*Affirmed.*