# Richmond

LEWIS HAMPTON SHUMATE, JR. v. COMMONWEALTH OF VIRGINIA.

March 6, 1967.

Record No. 6387.

Present, All the Justices.

H. E. *Widener, Jr.* and *T. L. Hutton, Jr.* (*Joseph P. Johnson, Jr.*; *D. H. Frackelton; Widener, Widener & Frackelton*, on brief), for the plaintiff in error.

*A. R. Woodroof, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

Lewis Hampton Shumate, Jr., defendant, was convicted of operating a motor vehicle while under the influence of alcohol in violation of Code § 18.1-54, 1960 Repl. Vol. He waived a jury, was tried by the court, found guilty and was sentenced to pay a fine of $200 and his privilege to operate a motor vehicle in Virginia was suspended for a period of twelve months, Code § 18.1-59, 1966 Cum. Supp. From this judgment he was granted a writ of error.

On April 18, 1965, at approximately 2:45 a.m., a motor vehicle driven by defendant was observed proceeding west on Interstate Route 81 in Washington county by Troopers V. A. Richardson and Lloyd Lester. Trooper Richardson testified that he saw defendant's vehicle, traveling about fifty miles an hour, twice weave to the left across the center line before the troopers stopped it.

The trooper testified that defendant was unsteady on his feet as he got out of his automobile, that he was rocking and his walking was unsteady, that his face was flushed, his eyes red-rimmed, and he had a heavy odor of intoxicants about him. He took about five minutes, the trooper said, to locate and produce his operator's license and his vehicle registration card, first giving the trooper a voter registration card.

When the trooper advised the defendant that he would be charged with driving under the influence of alcohol, defendant kept stating, "My family will be heartbroken" and "Why are you punishing me?"

Shumate, a furniture manufacturer in Johnson City, Tennessee, and owner of a farm in Washington county, testified that when arrested he was driving from his farm to his home because of sickness in his family. He attributed the weaving of his automobile to carelessness, his physical unsteadiness to the nervous reaction caused by being stopped by the troopers, and his flushed appearance to having been in the sun the previous day. He said that he had had nothing to drink since before supper, which was between six and seven o'clock.

Upon being informed that when he operated a motor vehicle on the highways of Virginia, he was deemed to have consented to submit to a blood alcohol test if charged with driving under the influence of alcohol, he gave his actual consent to take a test and was taken first to the county jail and then to an Abingdon hospital.

The only evidence relating to the actual taking of the blood sample was supplied by Trooper Richardson, who said that the containers for the blood were opened in the presence of the defendant, that the removal of the cellophane wrappers from the containers was called to defendant's attention, and that after the blood sample was taken it was placed in the containers and these were sealed, which was also called to defendant's attention.

The trooper kept one sample (in vial designated brown), which he sent to the office of the State chief medical examiner for testing. He testified that he told defendant that he could fill out a form directing that the other vial (designated blue) be sent to an approved, independent laboratory for testing, and a list was given him to show where it could be sent; but defendant did not wish to fill out the form at that time and he (the trooper) turned the blue sample over to a deputy sheriff at the Washington county jail, the county sheriff not being present or available at the time.

The deputy sheriff, John A. McCall, defendant's witness, testified that Trooper Richardson brought this blue sample to the jail, and not finding the sheriff asked McCall to accept it at the sheriff's office, which McCall did, and he dated the box containing the sample and put defendant's name on it. He produced and filed as an exhibit the form for obtaining an independent analysis prescribed by § 18.1-55.1 (d1) of the Code. He testified that the blue sample was not then forwarded for analysis because the form directing it to be done was not properly signed. In the blank space on the form for writing the name of the person whose blood was taken there was illegible writing, so determined by the court, and the place for the defendant's signature was blank.

This form and the blue sample remained in the sheriff's office until defendant's case was called in the county court on May 7, 1965, at which time his name was signed thereto by his counsel and the blue sample was then sent to Lewis Gale Hospital, in Roanoke, for analysis as directed.

McCall testified that the defendant at no time requested him to mail this sample prior to May 7.

Defendant testified that he put his signature beside a check mark on the form where "they" marked for him to sign, and that the writing in the blank space was his signature. Asked whether anybody told him to put his signature there, he answered, "I think so."

The report of the analysis made by the chief medical examiner showed that defendant's blood had an alcohol content of .22% by weight and the report from the Lewis Gale Hospital showed an alcohol content of .21% by weight. An alcoholic content of .15% or more creates a presumption that defendant was under the influence of alcoholic intoxicants. Code § 18.1-57, 1966 Cum. Supp.

Defendant contends, first, that neither report of the blood analysis was admissible in evidence because the taking of the blood violated his right against self-incrimination guaranteed by Article 1, § 8 of the Virginia Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

It is now settled by the decisions of this court and of the United States Supreme Court that these constitutional guaranties are not violated by such taking of blood.

In *Walton* v. *City of Roanoke*, 204 Va. 678, 681, 133 S.E.2d 315, 317, we said:

"The constitutional prohibition against compelling one in a criminal court to give evidence against himself is restricted to oral testimony and does not preclude the use of one's body or secretions therefrom and the result of their chemical analyses. * *" See also *Caldwell* v. *Commonwealth*, 205 Va. 277, 136 S.E.2d 798.

In *Schmerber* v. *California*, 384 U.S. 757, 16 L.ed.2d 908, 86 S.Ct. 1826, decided June 20, 1966, defendant was charged with driving under the influence of intoxicants and a sample of his blood was taken against his will and at the direction of a police officer. He claimed this violated his privilege against self-incrimination under the Fifth Amendment, but the court rejected his claim and held "that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends."

Defendant next contends that his statements, "My family will be heartbroken" and "Why are you punishing me?", made to the arresting officer after defendant was advised that he would be charged with driving under the influence of alcohol, were not admissible in evidence because he had not been advised of his right to counsel.

He relies on *Cooper* v. *Commonwealth*, 205 Va. 883, 140 S.E.2d 688, where Cooper's conviction for the rape of a four-year-old girl was reversed because of the admission into evidence of a statement made by Cooper while represented by counsel but in counsel's absence, after indictment, during interrogation by a State police investigator. The investigator testified that he played to Cooper a tape recording of the infant prosecutrix telling her mother what Cooper had done to her. He asked Cooper why the child would make up such a story; that there was bound to be some reason for it, and Cooper "half started crying and he said I do not know why."

That case does not aid the defendant. Cooper was charged with a capital felony, was intellectually of the lower limits of normal, and was being subjected to accusatory post-indictment interrogation without the presence of counsel. Shumate, a manufacturer and farm owner, charged with a misdemeanor, Code § 18.1-58, made his statements spontaneously and not in answer to interrogation by the trooper. Their admission violated none of his constitutional rights. See *Mathews* v. *Commonwealth*, 207 Va. 915, 153 S.E.2d 238, decided today.

Defendant also contends that the court erred in admitting in evidence the results of the blood tests and in not acquitting him because the provisions of § 18.1-55.1 were not complied with. He says it was not shown who took the blood; whether soap and water were used to cleanse the place at which the blood was taken; and that paragraphs (d1) and (d4) of said section, with respect to forwarding his blood sample for analysis or destroying the sample after seventy-two hours, were not followed.

In overruling defendant's objection the court stated that he would hear any evidence of noncompliance defendant had to offer. None was offered except with respect to the handling of the vial of defendant's blood analyzed at his request at Lewis Gale Hospital. As to this point there was evidence sufficient to warrant a conclusion that the defendant gave no direction to forward this sample until his attorney signed his name to the form and directed that the sample be sent to Roanoke for analysis. No one seemed to question that the blood was taken by a proper person in a proper way. Defendant's counsel asked the trooper what he did with the two containers he received "from the technician at Johnston Memorial Hospital" and the trooper replied that he advised the defendant that he would send the brown container to the chief medical examiner and that the de-

fendant had the privilege of having the blood in the blue one sent off.

The Virginia "implied consent law" was first enacted by the General Assembly in 1962 (Acts 1962, ch. 625, p. 1240). After detailing the procedures for taking, handling, identifying and disposing of the blood sample and for having it tested, the Act provided that if the result of the chemical analysis of the blood sample is not received in evidence at the trial for any reason whatever, including failure of any person except defendant "to comply strictly with every provision of this section, then the rights of the person arrested shall be deemed to have been prejudiced, and he shall be found not guilty * *" (Code § 18.1-55 (f)).[1]

The cases decided under the 1962 statute turned on the failure to prove strict compliance with the provisions of that statute. In *Brush v. Commonwealth* (see note) we said:

"In the absence of proof showing that the instrument used to withdraw defendant's blood was sterilized pursuant to the requirements of § 18.1-55 (c) the Commonwealth has not met the burden imposed upon it, and the certificates setting forth the alcoholic content of defendant's blood were not admissible." 205 Va. at 316-17, 136 S.E.2d at 868.

In 1964, however, the General Assembly repealed Code § 18.1-55 and re-enacted the "implied consent law" as Code § 18.1-55.1, with significant changes, Acts 1964, ch. 240, p. 441. See Ritz, *Criminal Law, supra,* at 1293-95. While the procedure for taking, handling, and having tested the blood samples was basically unchanged, the above quoted provision of paragraph (f) of the 1962 Act was deleted and an important change was made by adding subsection (s), as follows:

"(s) The steps herein set forth relating to the taking, handling, identification, and disposition of blood samples are procedural in nature and not substantive. Substantial compliance therewith shall be deemed to be sufficient. Failure to comply with any one or more of such steps or portions thereof, or a variance in the results of the

(1) For a discussion of the 1962 Act see Note, *Virginia's Implied Consent Statute,* 49 Va. Law Rev. 386, and Ritz, *Criminal Law, 1963-1964 Annual Survey of Va. Law,* 50 Va. Law Rev. 1291, discussing cases decided under the 1962 statute: *Brush* v. *Commonwealth,* 205 Va. 312, 136 S.E.2d 864; *Kyhl* v. *Commonwealth,* 205 Va. 240, 135 S.E.2d 768; *Lawrence* v. *City of Norfolk,* 205 Va. 209, 135 S.E.2d 792; *Rowland* v. *City of Richmond,* 205 Va. 187, 135 S.E.2d 799; *Lutz* v. *City of Richmond,* 205 Va. 93, 135 S.E.2d 156.

two blood tests shall not of itself be grounds for finding the defendant not guilty, but shall go to the weight of the evidence and shall be considered as set forth above [paragraph (r)][2] with all the evidence in the case, provided that the defendant shall have the right to introduce evidence on his own behalf to show noncompliance with the aforesaid procedure or any part thereof, and that as a result his rights were prejudiced."

Defendant complains that little evidence was presented by the Commonwealth as to how the blood samples were taken, *i.e.*, whether the procedure prescribed in Code § 18.1-55.1 (d) and (d1) was followed. In this contention he is correct. The evidence should have shown how the blood was taken, but defendant made no specific point about it. He was given full opportunity to present evidence on the point but offered none. If any evidence of noncompliance existed it would have been readily available because the hospital where the blood sample was taken was a short distance from the courthouse where defendant was being tried.

In any event, paragraph (s) of the 1964 Act provides that the question is procedural, and a failure to comply with the directed procedures goes to the weight of the evidence and is to be considered with all the evidence in the case, with the right to the defendant to show noncompliance and resulting prejudice. *Cf. Kay* v. *United States*, 4 Cir., 255 F.2d 476.

Paragraph (i) of Code § 18.1-55.1 (the 1964 statute) provides that the court shall, "regardless of the result of the blood test or tests, if any, consider such other relevant evidence of the condition of the accused as shall be admissible in evidence."

The evidence here, aside from the blood tests, was adequate to support the court's finding and judgment.

Defendant also complains of the introduction of the report on the blue sample (defendant's) because the physician at Lewis Gale Hospital who made the analysis wrote to the clerk of the court that "the last run of blood alcohol determinations was out of control in spite of the simultaneous determination of known standards.

"If it can be arranged, we would appreciate receiving the unused portion of the sample for repeat determinations in event that the value deviates significantly from the State Laboratory determination."

---

(2) Paragraph (r) of Code § 18.1-55.1 provides: "The court or the jury trying the case shall determine the innocence or the guilt of the defendant from all the evidence concerning his condition at the time of the alleged offense."

Apparently no retest was made, but there was no significant deviation between the two tests and the letter placed no obligation on the clerk to return "the unused portion of the sample." At most this was matter for the court to consider in weighing the evidence.

Defendant complains, finally, that the court erroneously shifted to him the burden of proof and the burden of producing evidence as to compliance with the provisions of Code § 18.1-55.1. He relies on the following statement of the court:

"Well, gentlemen, I am going to overrule you. I think there has been substantial compliance with the statute, according to the Trooper's evidence, and I am going to put the burden on you all, if you want to present evidence that there has not. As I understand the statute, that is what it says."

The court was obviously referring to the portion of § 18.1-55.1 (s), which gives the defendant the right to introduce evidence to show noncompliance and prejudice. The court concluded that there had been substantial compliance by the Commonwealth with the required procedures and was emphasizing the statutory right of defendant to introduce evidence of noncompliance resulting in prejudice of his rights.

Neither Code § 18.1-55.1 (s) nor the court's application of it changed the ultimate burden of proof in the case, nor did it deprive defendant of the presumption of innocence. *Cf. Dooley v. Commonwealth*, 198 Va. 32, 35-6, 92 S.E.2d 348, 350.

The judgment of the trial court is

*Affirmed.*