**Salem**

MALCOLM GLENN THURSTON

v.

CITY OF LYNCHBURG

No. 0634-91-3

Decided December 15, 1992

COUNSEL

John R. Alford (Mark J. Peake; Caskie & Frost, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a bench trial in the Circuit Court of the City of Lynchburg, Malcolm Glenn Thurston, appellant, was convicted of driving under the influence of alcohol in violation of Lynchburg City ordinance 25-162.[1] On appeal, Thurston contends (1) the trial court erred in admitting into evidence the results of the test administered to

---

[1] Pursuant to the predecessor to Code § 18.2-268.12, this local ordinance parallels the provisions of Code §§ 18.2-266 *et seq.* Subsequent to Thurston's trial on March 6, 1991, these Code

determine the alcohol content of his blood; (2) in the absence of the disputed blood test results, the evidence was insufficient to convict him of driving under the influence of alcohol; and (3) the trial court erred in denying his motion for a mistrial based on improper statements made by the Commonwealth's Attorney during the trial. For the reasons that follow, we affirm Thurston's conviction.

## I. Factual Background

In the early morning hours of October 24, 1990, Officer Jack Lewis of the Lynchburg Police Department observed Thurston driving his car on a public street in the City of Lynchburg. Officer Lewis further observed the car traveling ten to fifteen miles per hour in excess of the posted forty-five mile per hour speed limit and, at times, drifting over the white line on the side of the road and then back across the center dividing lines. Officer Lewis stopped the car and, upon approaching Thurston, noticed a "moderate odor of alcohol" about Thurston. When asked where he was going, Thurston replied, "I don't really know." Officer Lewis conducted various field sobriety tests, and Thurston performed them with varying degrees of success. Following the administration of a field "alcosensor" test, Officer Lewis arrested Thurston and informed him of Virginia's implied consent law embodied in Code § 18.2-268.2. Thurston elected to have a sample of his blood taken for analysis.

Thereafter, Officer Lewis transported Thurston to Lynchburg General Hospital for the purpose of obtaining the blood sample. At the hospital, Linda Taylor, a registered professional nurse, explained the procedure involved, obtained Thurston's consent, made the required preparations, and began to draw a sample of Thurston's blood. As the blood was being drawn, Thurston reached down and pulled the needle out of his vein. At that point, nurse Taylor had obtained "less than ten" cubic centimeters of blood. She explained to Thurston that she "did not get enough blood for two samples" and offered "to stick him [again] to get another sample." Thurston replied, "you only get one chance, baby." No further sample was taken.

Nurse Taylor then advised Officer Lewis that "normal procedure" or "hospital policy" was to obtain a sample of twenty cubic centimeters of blood so that ten cubic centimeters could be placed into each of

sections have been amended in parts not pertinent to the present appeal. For clarity we will refer to the current Code sections in this opinion.

two vials for analysis. In response, Officer Lewis instructed nurse Taylor to place the entire sample obtained into one vial. Officer Lewis sent that vial to the Division of Forensic Science Central Laboratory, a state laboratory, for analysis. The resulting certificate of analysis from the state laboratory showed a test result of .22 percent blood alcohol content by weight by volume. Over Thurston's objection, this certificate was admitted into evidence at Thurston's trial.

At the conclusion of the City's case, Thurston called several witnesses and testified in his own defense. Thurston admitted that beginning at 8:30 p.m. on the evening immediately preceding his arrest by Officer Lewis he had consumed two beers, three other alcoholic drinks, and one after-dinner liqueur in two local bars. He maintained, however, that he was not under the influence of alcohol and that, with the exception of the test involving the recitation of the alphabet, he had successfully performed the field sobriety tests.

Thurston further testified that he agreed to take the blood alcohol test. He maintained, however, that in administering the test, nurse Taylor "seemed to probe a little bit to find the vein, and when she stuck the needle in, it was a sharp pain, and I left it as long as I could and I pulled my arm back." Thurston maintained that his action was not voluntary but, rather, "a reaction from pain." He produced evidence of extensive bruising to his arm in support of his assertion of this pain.

Finally, Thurston testified that when he became aware that he could obtain an independent analysis of his blood sample, he made an unsuccessful request within seventy-two hours as required by law that a portion of the sample be sent to a laboratory selected by him.

At the conclusion of all of the testimony, the trial court stated:

I find factually that it was [Thurston's] own voluntary act that disrupted the blood testing procedure and in addition to that, the evidence aside from the blood test is sufficient in my view to find him guilty. But I am going to let the tests [sic] in under the circumstances and in this case find him guilty as charged.

## II. Discussion

Code §§ 18.2-268.2 through 18.2-268.8 provide the procedural requirements for taking, handling, identifying and disposing of blood

samples under Virginia's implied consent law. To implicate the statutes, the driver must have operated a motor vehicle upon a public highway in this Commonwealth and have been arrested for a violation of Code § 18.2-266 (or a similar ordinance) within two hours of the alleged offense of driving under the influence of alcohol. Pertinent to the present appeal, Code § 18.2-268.6 provides that "[a]dequate portions of the blood samples" shall be withdrawn in accordance with Code § 18.2-268.5 and be placed into two vials and sealed, and in turn, each vial shall be placed into separate sealed containers. Thereafter, one container shall be sent by the arresting officer to the Division of Forensic Science for testing, and the other upon the request of the accused shall be sent by that officer to a laboratory of the accused's choice for independent testing. When taken in accordance with the required procedures, analyzed and identified, Code § 18.2-268.7 provides for the admissibility of the results of these blood tests at the trial for a Code § 18.2-266 offense.

█ This statutory scheme provides obvious protections for the accused. In *Walton v. City of Roanoke*, 204 Va. 678, 133 S.E.2d 315 (1963), our Supreme Court explained the "salutary purpose" of this statutory scheme. There the Court explained:

A chemical analysis of one's blood provides a scientifically accurate method of determining whether a person is intoxicated, removes the question from the field of speculation and supplies the best evidence for that determination. [Code § 18.2-268.2] protects one who has the odor of alcohol on his breath but has not been drinking to excess, and one whose conduct may create the appearance of intoxication when he is suffering from some physical condition over which he has no control.

*Id.* at 683, 133 S.E.2d at 319 (discussing former Code § 18.1-55, the predecessor to Code § 18.2-268.2).

Relying primarily upon *Walton* and the salutary purpose of the statutory scheme of obtaining two blood samples, Thurston asserts that without a sample for independent analysis he "is at risk of being mistakenly convicted" and is "at the mercy of the state's testing division and subject to any bias or mistakes on the part of that division." In short, he asserts that because he was denied a separate blood sample to which he was entitled, it was error to admit the results of the City's blood test against him. The City responds that its failure to provide the separate sample resulted solely from Thurston's conduct. It asserts

that Thurston prevented the completion of the blood removal procedure and, thus, cannot complain that a sample for the second vial was not obtained in order for him to have obtained an independent analysis. For reasons that will become apparent, in order to address the legal issues raised by these contrasting assertions, it is necessary that we first clarify the factual conflicts supporting them.

There is no dispute that only one blood sample was obtained and that sample was sent to the state laboratory. The dispute is whether Thurston was at fault for the City's failure to provide him with a separate sample for independent testing and whether, regardless of his conduct, an "adequate portion" was obtained for that purpose. Thurston first argues that his act of jerking his arm was *involuntary* and resulted solely from the "excruciating pain" caused by the needle used to draw a sample of his blood. He supports this argument by referring to the bruising around the area where the nurse inserted the needle in his vein and his immediate complaints of pain. However, the trial court specifically found that Thurston's act in removing the needle and thus interrupting the blood removal procedure was a *voluntary* act. On appeal we are not fact finders. Rather, where the trial court's factual finding is supported by credible evidence and is not plainly wrong, we are bound by that determination. *See Keener v. Commonwealth*, 8 Va. App. 208, 214, 380 S.E.2d 21, 25 (1989). Here, the trial court's factual finding that Thurston's interruption of the blood removal procedure was a voluntary act is supported by credible evidence and is not plainly wrong. Accordingly, we must resolve this appeal in light of that factual finding and not Thurston's assertion that his act was involuntary.

The determination that Thurston voluntarily interrupted the completion of the blood removal procedure brings Thurston's next assertion into proper focus. Thurston argues that, regardless of his act of interrupting the blood removal procedure, because no evidence was introduced to establish that the blood sample obtained from him was not an "[a]dequate portion" to be divided so that he could obtain an independent analysis, the prosecution against him should be dismissed. In other words, he contends that in the absence of a showing that the blood sample obtained was not an "[a]dequate portion" for two analyses as provided by Code § 18.2-268.6, he was wrongfully denied his statutory right to an independent analysis.

Code § 18.2-268.6 does not define the amount of blood deemed to be "[a]dequate portions of the blood samples" to be withdrawn for

the two vials. Under the statute, that determination is for the medical technician and depends upon the testing procedure to be implemented. The statute contemplates that the amount to be drawn will be consistent with reasonable medical practices. A valid question may arise in some instances whether the amount of blood drawn for either the first vial or the second vial was an ''[a]dequate portion'' for analysis. Here, however, we need not be concerned with that question because Thurston voluntarily interrupted the blood removal procedure before any blood was drawn for the second vial. He does not challenge the sufficiency of the sample in the first vial. Thus, the dispositive determination is the effect of Thurston's voluntary act of interrupting the completion of the blood removal procedure.

■ As a general proposition, where the government has failed in its responsibilities to follow the statutory mandates in the taking, handling, identification and disposition of blood samples under the statutory scheme, the Courts have held that it is error to admit at trial the results of tests concerning such blood samples. *See generally Lutz v. City of Richmond*, 205 Va. 93, 135 S.E.2d 156 (1964) (date of certificate of analysis one day prior to date of offense); *Rowland v. City of Richmond*, 205 Va. 187, 135 S.E.2d 799 (1964) (doctor refused to take blood sample because accused's signature on consent form was allegedly illegible); *Kyhl v. Commonwealth*, 205 Va. 240, 135 S.E.2d 768 (1964) (evidence failed to establish that needle used to take blood sample was sterilized). *See also Brooks v. City of Newport News*, 224 Va. 311, 295 S.E.2d 801 (1982) (error to admit results obtained from unlicensed breath test operator); *Wendel v. Commonwealth*, 12 Va. App. 958, 407 S.E.2d 690 (1991) (''lost'' test results requiring dismissal); *Williams v. Commonwealth*, 10 Va. App. 636, 394 S.E.2d 728 (1990) (unsealed container requiring reversal).

■ These cases, however, do not resolve the issue presented in this appeal. Here, the government's failure to comply strictly with the statutory mandate to provide the accused with a sample of blood for independent testing resulted from the voluntary act of the accused in interrupting the completion of the blood removal process. We are unable to find a Virginia appellate decision directly dispositive in this factual context. We hold that where an accused, such as Thurston, voluntarily interrupts the blood removal procedure before the physician, nurse or technician completes that procedure, the accused, by his conduct, shall be deemed to have waived his right to an independent analysis of a separate sample as provided by Code §§ 18.2-268.6 and 18.2-268.7.

*See Arizona v. Goodwin*, 160 Ariz. 366, 773 P.2d 471 (1989) (holding that an accused by his acts can waive his right to a breathalyzer test result). Having determined that Thurston's conduct amounted to a waiver of his right to an independent test of the blood sample obtained from him, we must decide whether the results of the test performed by the state laboratory were admissible at his trial.

■ Thurston elected to have a sample of his blood taken and permitted an adequate portion to be taken and placed in one vial before he interrupted the blood removal procedure. That sample was taken and analyzed in accordance with the statutory requirements. Nothing in the record suggests that absent his voluntary disruptive act, Thurston would not have obtained a separate sample for independent testing. Furthermore, Thurston's assertion on appeal that another blood test or breath test should have been offered to him is without merit. An accused may not pick and choose the specific sample he wants withdrawn. He or she either consents or refuses. Code § 18.2-268.3 makes it clear that once Thurston consented and a sample was obtained but he prevented the blood removal procedure to be completed, no further blood sample could be taken "even though he may later request them." It would be illogical to conclude that the accused's waiver of his right to an independent test would render the results of the government's test inadmissible. Accordingly, because the government complied with the statutory requirements with regard to the sample that was tested by the state laboratory and Thurston waived his right to a sample for independent testing, it was not error to admit into evidence the certificate of analysis from the Division of Forensic Science Laboratory at Thurston's trial.

■ Code § 18.2-266 prohibits drinking alcohol and driving under either of two separate and distinct circumstances. Code § 18.2-266(i) prohibits driving while the driver "has a blood alcohol concentration of 0.10 percent or more . . . as indicated by a chemical test administered as provided in [other pertinent Code sections]." On the other hand, Code § 18.2-266(ii) prohibits driving "while such person is under the influence of alcohol." The chemical tests performed in accordance with the provisions of Code §§ 18.2-268.2 through 18.2-268.12 provide for certain presumptions for and against the conclusion that a driver was "under the influence of alcohol" at the time he or she was driving pursuant to Code § 18.2-269. These presumptions, however, are not applicable to a prosecution under Code § 18.2-266(i). *See Davis v. Commonwealth*, 8 Va. App. 291, 297-98, 381 S.E.2d 11,

15 (1989). Regardless of these distinctions, the thrust of the statutory scheme is to prohibit drinking and driving where the driver's ability is impaired to operate safely a motor vehicle. That degree of intoxication, or being "under the influence of alcohol," is established when any person has consumed enough alcoholic beverages to "so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation." *Gardner v. Commonwealth*, 195 Va. 945, 954, 81 S.E.2d 614, 619 (1954). In short, under this statutory scheme a driver has violated Code § 18.2-266 either when he drives with a blood alcohol concentration of 0.10 percent or more, or does so while under the influence of alcohol. In either case, however, Code § 18.2-268.10 speaks to that which must be determined by the trial court. In pertinent part, this Code section provides:

> In any trial for a violation of § 18.2-266 or a similar ordinance, the admission of the blood . . . test results shall not limit the introduction of any other relevant evidence bearing upon any question at issue before the court, and the *court shall, regardless of the result of any . . . tests,* consider other relevant admissible evidence of the condition of the accused. . . .

> \* \* \*

> The court . . . trying the case . . . shall *determine the innocence or guilt of the defendant from all the evidence concerning his condition at the time of the alleged offense.*

(emphasis added).

 "The statutory mandate is that the guilt or innocence of the accused be determined from all the evidence of his condition at the time of the alleged offense, with or without a [blood] analysis." *Brooks*, 224 Va. at 315-16, 295 S.E.2d at 804. In this way, "[t]he result of a [blood] analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms [of being under the influence of alcohol]." *Id.* at 316, 295 S.E.2d at 804 (analyzing the predecessor to Code § 18.2-268.10 containing the same language emphasized above in the context of breath test administered by an unlicensed examiner and erroneously admitted into evidence).

These principles guide our review of the sufficiency of the evidence to support Thurston's conviction. Based upon our review of the evidence in this record, we are satisfied that the evidence was sufficient.

The blood test results and the other evidence of Thurston's condition leave no room for reasonable doubt that Thurston was under the influence of alcohol at the time he operated his car. Moreover, while the record clearly reflects that the trial court made its determination of Thurston's guilt from all the evidence ''aside from the blood test [result]'' which we have now determined to have been admissible at his trial, the evidence supports that determination. The evidence of Thurston's consumption of alcohol prior to operating his car, the manner in which he operated his car, his inability to recite accurately the alphabet, and his conduct during the testing procedure all combine to establish beyond a reasonable doubt his guilt.

We turn then to Thurston's final argument that the trial court erred in denying his motion for a mistrial based on improper statements made by the Commonwealth's Attorney. The factual basis for this argument arose when the Commonwealth's Attorney referred to Thurston as an ''alcoholic'' during the cross-examination of one of Thurston's witnesses and referred to Thurston's ''ability to throw back quite a few [alcoholic drinks] at a time'' during the cross-examination of another defense witness. Finally, in an exchange with the trial court concerning Thurston's objections to these questions, the Commonwealth's Attorney stated to the court that he had personal knowledge of evidence not before the court that would support the ability of the witnesses to address his position that ''alcoholics have a higher tolerance for alcohol and therefore their motor skills may not be quickly affected by it.'' These statements were clearly improper. However, it is just as clear that the trial court sustained Thurston's objections, gave no consideration to the objectionable statements, and ''[tried] the case just on the evidence that [came] before [it] and nothing else.'' Accordingly, no prejudice resulted to Thurston and his assertion that the trial court erred in denying his motion for a mistrial is without merit.

In summary, we hold that Thurston's voluntary act in disrupting the blood removal procedure constituted a waiver of his right to a separate sample for independent testing. It was not error for the trial court to admit the results of the blood test analyzed from the one sample sent to the state laboratory by the arresting officer. The evidence was sufficient to establish Thurston's guilt beyond a reasonable doubt. The statements made by the Commonwealth's Attorney, while improper, were not considered by the trial court and, thus, it was not error to

deny the motion for a mistrial based on those statements. For all of these reasons, the conviction is affirmed.

*Affirmed.*

Coleman, J., and Trabue, Judge Designate,* concurred.

---

* The Honorable Kenneth E. Trabue took part in the consideration of this case by designation, pursuant to Code 17-116.01.