COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Causey and Senior Judge Petty
Argued by videoconference


BREON LATHAM

MEMORANDUM OPINION* BY
v.      Record No. 1088-23-1              JUDGE WILLIAM G. PETTY
                                         NOVEMBER 26, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Eric Weathers, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Linda R. Scott, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Breon Latham appeals his conviction, following a bench trial, of driving under the

influence of alcohol (DUI) as a third offense within ten years, in violation of Code §§ 18.2-266

and -270(C)(1).  On appeal, Latham argues that the evidence was insufficient to prove that he

drove while he was under the influence of alcohol.  He further argues that this Court should

modify, reverse, or overrule *Gardner v. Commonwealth*, 195 Va. 945 (1954), and its progeny.

For the following reasons, we disagree, and affirm the conviction.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

At 12:40 a.m. on October 30, 2020, Chesapeake Police Officer Kyshaun Merchant observed a vehicle driving 32 miles per hour in a 25 mile-per-hour zone. Officer Merchant executed a U-turn and followed the vehicle. When Officer Merchant caught up to the vehicle, he observed it make a left turn onto Berkley Avenue. The vehicle continued on Berkley Avenue and failed to stop completely at a stop sign at an intersection before turning right onto Wingfield Avenue. The vehicle continued along Wingfield Avenue "continuously applying and releasing the brakes, jerking the car forwards and backwards." Officer Merchant noted that the application of the brakes was more frequent than required by the dips and potholes in the road. Consequently, Officer Merchant activated his emergency lights and initiated a traffic stop.

After stopping, Latham, the sole occupant, got out of the car on his own accord and stumbled as he approached Officer Merchant's vehicle. The area of the stop was flat asphalt, and there was no debris or gravel in the roadway. While talking with Latham, Officer Merchant detected an odor of alcohol coming from Lantham's person and breath, noticed that Latham's speech was slurred, and saw that Latham's eyes were glassy, watery, and bloodshot.

Officer Merchant asked Latham to perform field sobriety tests to determine his level of impairment; Latham declined. Based on his observations, Officer Merchant placed Latham under arrest for DUI. Upon arrest, Latham denied drinking any alcoholic beverage for several days. Officer Merchant acknowledged that he did not provide Latham with a preliminary breath test because one was not available.

While searching Latham's vehicle, Officer Merchant noticed that a liquid appeared to have been spilled across the center console causing the center console, the driver's seat, and

- 2 -

armrest to be damp. On the floor of the front passenger footwell, Officer Merchant found an empty Burger King cup that smelled of an alcoholic beverage. In the rear passenger's seat, he found a six pack of unopened beer that was cold-to-the-touch.

On cross-examination, Officer Merchant acknowledged that Latham maintained his lane of travel and did not rapidly accelerate or decelerate except for the excessive braking that occurred on Wingfield Avenue. Furthermore, except for Latham's stumbling upon exiting his vehicle, he maintained his balance during the 20-minute period of observation and was relatively cooperative. Officer Merchant also admitted that Latham accurately articulated the date and the time as well as where he was and where he was going. Officer Merchant noted, however, that each DUI is unique and that "each arrestee and each subject of a DUI investigation handles and processes the level of impairment differently than the others."

Latham then played a video he took of his route that evening for the trial court.[1] Officer Merchant attested that the road condition depicted in the footage, which consisted of several dips, was consistent with the road's condition on the evening of the stop. The Commonwealth entered Latham's prior DUI convictions into evidence.

Latham testified on his own behalf.[2] He stated that on October 30, 2020, he was watching football when his friend, Eric Reed, called and asked for a ride home because Reed was too intoxicated to drive. Latham agreed. When Latham arrived at Reed's location, Reed placed a six-pack of beer in the car's rear passenger seat. After Latham dropped off Reed, the police stopped Latham as he drove home.

---

[1] Although this video was properly admitted into evidence, it was not made a part of our record on appeal.

[2] Latham admitted that he was a felon.

When asked about the Burger King cup, Latham denied that the cup was his and asserted that it belonged to Reed. Additionally, Latham could not remember if, when, or how the cup spilled that evening. Latham also denied drinking alcohol that evening, that his breath smelled like alcohol, that he stumbled when he exited his vehicle, or that his driver's seat was damp. When the trial court asked Latham why he had applied the brakes in the manner that he did, Latham stated that it was dark and he wished to drive safe and avoid the dips in the road. When asked if he knew that Officer Merchant was following him, Latham admitted he was aware of Officer Merchant's presence.

After argument from counsel, the trial court made several factual findings. The trial court found Latham's testimony to be incredible and Officer Merchant's testimony to be credible. The court opined that Latham likely exited the car to keep Officer Merchant from viewing the spilled liquid and the alcohol in the back seat. While talking with Officer Merchant, Latham's outward appearance indicated that he was intoxicated because he was slurring his words, smelled of alcohol, and had bloodshot, watery eyes.

The trial court then considered whether Latham's intoxication impaired his ability to safely operate his vehicle. The court noted that the only instance when Latham drove unusually was when he applied his brakes in short succession on Wingfield Avenue. Despite the court's inquiry as to why Latham drove in that manner, the court found that Latham failed to provide an adequate explanation. The court reasoned that Latham was braking in that manner to appear cautious and mindful to the officer who was following him. Rather than quell suspicion, the court found that this maneuver attracted attention and demonstrated that Latham was unable to control the slow braking and slow acceleration necessary to properly execute the maneuver. The trial court convicted Latham of DUI and sentenced him to 2 years of imprisonment, with 1 year and 9 months suspended, and a $1,050 fine. Latham appeals.

ANALYSIS

I.

Latham argues that the evidence was insufficient to support his conviction for driving while under the influence of alcohol. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Latham concedes that the trial court applied the correct legal standard below but argues that the trial court "wrongly concluded that the evidence was sufficient to show that" alcohol impaired his ability to drive safely. Latham notes that he did not swerve or deviate from his lane of travel; he safely executed two turns; and, although he was traveling seven miles per hour over the speed limit, his speed was consistent. Further, despite stumbling while exiting his vehicle, he maintained his balance throughout his interaction with Officer Merchant.

"It shall be unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol[.]" Code § 18.2-266(ii). "[T]he thrust of the statutory scheme is to prohibit drinking and driving where the driver's ability is impaired to operate safely a motor vehicle." *Hogle v. Commonwealth*, 75 Va. App. 743, 753 (2022) (alteration in original) (quoting *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992)). The requisite "degree of

- 5 -

intoxication, or being 'under the influence of alcohol,' is established when any person has consumed enough alcoholic beverages to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" *Id.* at 753-54 (quoting *Thurston*, 15 Va. App. at 483). "In determining whether a defendant was under the influence, a factfinder considers 'all of the evidence of his condition at the time of the alleged offense.'" *Id.* at 754 (quoting *Leake v. Commonwealth*, 27 Va. App. 101, 109 (1998)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"In a bench trial, the trial judge's 'major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004)). "Under our standard of review, a factfinder may draw reasonable inferences from basic facts to ultimate facts, and those inferences cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*." *Perkins*, 295 Va. at 332 (internal quotation marks omitted) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015)).

"The 'reasonable hypothesis of innocence' concept is also well defined. The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the

evidence itself, and not from the imagination' of the defendant." *Kelley*, 69 Va. App. at 629 (quoting *Pijor*, 294 Va. at 512). So "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (alterations in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)).

"While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)). "The rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)).

Here, the trial court specifically found that Officer Merchant was credible and that Latham was incredible. Further, the trial court rejected Latham's hypothesis of innocence—that he was simply driving carefully at night—and instead found that Latham was being overly cautious to avoid detection. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

While in a marked patrol vehicle, Officer Merchant observed Latham driving seven miles per hour over the posted speed limit. Officer Merchant executed a U-turn and followed Latham. Latham maintained his speed and lane, but failed to come to a complete stop at a stop sign. After making a second turn, Officer Merchant observed Latham apply his brakes 3 or 4 times in quick

succession over the course of 10 to 15 seconds causing the vehicle to jerk violently back and forth. Consequently, Officer Merchant executed a traffic stop.

Latham pulled his vehicle over, immediately got out of the car, and stumbled as he made his way to Officer Merchant. Officer Merchant testified that the area in which he and Latham had stopped was flat, paved, and without debris. While speaking with Latham, Officer Merchant noticed that Latham's speech was slurred, his eyes were glassy, watery, and bloodshot, and there was an odor of alcohol about Latham's person and on his breath. When asked to perform some balance and coordination exercises, otherwise known as field sobriety tests, Latham declined to do so.[3]

While searching Latham's vehicle, Officer Merchant noticed that the driver's seat and center console appeared to be damp. In the front passenger footwell, Officer Merchant found an empty Burger King cup that smelled of alcohol. In the back seat, Officer Merchant found a cold, unopened six-pack of beer.

From the totality of the circumstances, a rational trier of fact could conclude beyond a reasonable doubt that Latham was under the influence of alcohol to a degree which impaired his

---

[3] When discussing the relevance of such refusal in the context of a probable cause analysis, the Supreme Court has observed that

> [w]hen other facts show a driver's consumption of alcohol and the discernable effect of such consumption on the driver's mental or physical state, the driver's refusal to perform field sobriety tests is circumstantial evidence tending to show the driver's awareness that his consumption of alcohol would affect his ability to perform such tests.

*Jones v. Commonwealth*, 279 Va. 52, 58-59 (2010).

"ability . . . to operate safely a motor vehicle."[4]  *Hogle*, 75 Va. App. at 753 (quoting *Thurston*, 15 Va. App. at 483).

II.

Lastly, Latham asks this Court to modify, reverse, or overturn *Gardner* and its progeny because its continued application conflicts with the state of the law as interpreted by Virginia appellate courts.  Latham acknowledges that the trial court did not apply the *Gardner* standard below and implores this Court not to apply *Gardner* on appeal.

We decline Latham's invitation to modify, reverse, or overturn *Gardner*.  "[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule" them.  *Roane v. Roane*, 12 Va. App. 989, 993 (1991).  Further, accepting Latham's invitation would amount to this Court issuing an advisory opinion.  *See Commonwealth v. Harley*, 256 Va. 216, 219-20 (1998) ("[C]ourts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." (second alteration in original) (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30 (1964))).  Consequently, we affirm the trial court's decision.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[4] Having found the evidence sufficient to sustain Latham's conviction under Code § 18.2-266(ii), we need not consider his alternative argument that the evidence did not prove his guilt under Code § 18.2-266(iv).

Causey, J., dissenting.

Today, while affirming the decision of the trial court in accord with the well-established principles of judicial deference, the majority fails to reckon with the equally important principle that the decisions of this Court, insofar as they require statutory interpretation, must "ascertain and give effect to legislative intent." *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018) (quoting *Brown v. Commonwealth*, 284 Va. 538, 542 (2012)). I echo the majority's reiteration of the deference this Court must give to the trial court's factual findings. *See Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011). In dissenting, I do not contend with these factual findings; rather, I do not believe that those facts, considered in light of the requisite statutory scheme, could have led any reasonable trier of fact to find the essential elements of the crime beyond a reasonable doubt. In reviewing the evidence in this case and in examining the statutory provisions implicated in convictions under Code § 18.2-266, I must respectfully dissent.

1. Statutory Requirements

The purpose and structure of the relevant statutory scheme indicates that a conviction for driving while intoxicated requires that the driver be intoxicated to an extent that impaired his ability to operate a vehicle safely. In this first section, I review this scheme and emphasize that both "under the influence" *and* impairment must be shown.

It is unlawful in the Commonwealth for an individual to operate a motor vehicle when: (i) their blood alcohol content (BAC) measures above .08% at the time of the offense; (ii) they are under the influence of alcohol; (iii) they are under the influence of drugs such that it impairs their ability to drive; (iv) they are under the combined influence of drugs and alcohol such that it

impairs their ability to drive; or (v) their BAC contains certain levels of specific drugs in their system at the time of the offense.[5]

Our Supreme Court, in *Rix v. Commonwealth*, 282 Va. 1, 2 (2011), noted that "Code § 18.2-266 makes it unlawful to 'drive or operate' a motor vehicle while under the influence of alcohol to a degree that impairs one's ability to drive safely." In *Rix*, this assertion was followed immediately by the statutory definition of "operator [of a motor vehicle]," as the appellant's sole contention in that case was that she had not been operating the motor vehicle at the time of the alleged offense. *Id.* (alteration in original) (quoting Code § 46.2-100). She did not contest the sufficiency of the evidence showing that she was "under the influence," and thus the Court did not consider the question of sufficiency in that regard. *Id.* However, *Rix*'s statement regarding the import of Code § 18.2-266 is a statement of the statute's *purpose*. This purpose is manifestly incorporated in subsections (iii) and (iv), but appears not to be explicitly included in subsection (ii).

While the legislative history is not explicit in asserting the basis for the omission of this element in subsection (ii), its inclusion in subsections (iii) and (iv), the drug-inclusive provisions of the statute, makes sense: unlike alcohol, the consumption or ingestion of which does not *necessarily* "influence" a person, the consumption and ingestion of drugs will *inherently* "influence" a person. To find that a person was simply under the influence of alcohol and drugs absent the qualification that his ability to safely drive or operate a vehicle was impaired, a person could theoretically be convicted after consuming alcohol and any prescription or over-the-counter drug, as the drug itself would necessarily "influence" him, even if its "influence" was limited to abating a headache. The importance of this distinction is expressly stated and demonstrated in *Brown v. Commonwealth*, No. 1021-21-1, slip op. at 8, 2022

---

[5] Code § 18.2-266(i) through (v).

- 11 -

Va. App. LEXIS 635, at *10 (Dec. 13, 2022): "In contrast [to subsection (ii)], subsection (iii) is purposefully written to require proof not only that the defendant was under the influence of drugs but also that those drugs actually impaired the defendant's ability to drive safely." In *Brown*, although the defendant was under the influence of Ambien, melatonin, and amitriptyline, the absence of both any statutory presumptions regarding those drugs and any evidence indicating that those drugs impaired the defendant's ability to drive safely rendered the evidence insufficient to support a conviction under subsection (iii). *Id.* at 15, 2022 Va. App. LEXIS 635, at *20.

The majority states that the "thrust of the statutory scheme" is to prevent driving while one's ability is impaired. *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992). I agree. I also emphasize that finding that the driver's ability to drive safely is impaired is not only an essential element of a Code § 18.2-266 offense under subsections (iii) and (iv). Where the "thrust of the statutory scheme," *id.*, is to prevent driving while one's ability is impaired, we can understand that the General Assembly enacted detailed provisions to ensure the validity of that end. Therefore, in the absence of chemical testing, a trial court must evaluate not only whether the defendant consumed alcohol, but also whether he was under the influence to an extent that would have impaired his ability to drive safely.[6]

---

[6] Of note, the majority appears to agree with Mr. Latham's assertion that the trial court applied the "correct [standard]" in "depart[ing]" from *Gardner v. Commonwealth*, 195 Va. 945 (1954), and "appl[ying] a framework consistent with *Davis* [*v. Commonwealth*, 8 Va. App. 291 (1989)], *Rix*, and the state of the law." In *Gardner*, the defendant argued that the court erred in its jury instruction and in admitting the testimony of the officer regarding his refusal to take a blood test. 195 Va. at 949-50, 952-53. In holding that the jury instruction was too broad, the Court noted that the definition of "intoxication" in Code § 4-2(14) was "not as broad and all inclusive" as the jury instruction. *Id.* at 954-55. *Gardner* neither implicitly nor explicitly mandates that such definition must be applied in all cases, nor is its supporting case law still relevant. It relied upon what

> [the Court] said in *Owens v. Commonwealth*, 147 Va. 624, at 629
> [(1927)], that "the test to be applied in a prosecution under section

- 12 -

2.  The Importance of Chemical Testing

While Code § 18.2-266 is the statute under which a person is charged, the subsequent code sections provide detailed procedural requirements regarding any arrest and conviction under Code § 18.2-266.  These sections demonstrate the care and deliberateness taken by the General Assembly to not only protect the rights of any individual so accused, but also to ensure the proper conviction of those who were in fact in violation of the law.  While, as discussed in the next section, chemical testing is not an absolute prerequisite for a conviction, a review of this elaborate scheme reveals the important role that the legislature thought such testing would play in adjudicating cases under Code § 18.2-266.

Any person who drives or operates a vehicle on a Virginia highway has, by so doing, consented to have samples of his blood, breath, or both taken for chemical testing to determine the amount, if any, of alcohol, drugs, or combination of alcohol and drugs in his system if he is arrested for driving under the influence.[7]  If, however, a person is stopped by a law enforcement officer and is suspected of, but not yet arrested for, driving under the influence, the person has a right to request a preliminary breath test, if one is available, and to watch the analysis from start to finish.[8]  Such a person is entitled to request this testing, and the law enforcement officer is

---

25 (now Code section 18-75), is not merely the ability of the driver to operate the automobile in safety to himself and others, but whether or not he is under the influence of intoxicants at the time he is driving or running an automobile, and this question is one of fact which must be determined by the jury."

*Id.* at 954.  *Owens* was a 1927 prohibition law case.  This test is no longer applicable.  We have new laws.  Alcohol is legal.  Insofar as *Gardner* establishes a "test" through its reliance on the Commonwealth's definition of "intoxicated" within Title 4, it does so only to support its holding that the jury instruction of the trial court was too broad and unduly prejudiced the defendant.

[7] Code § 18.2-268.2(A).

[8] Code § 18.2-267(A).

- 13 -

required to inform the person of that right.[9]  If he is in fact arrested, his right to request a preliminary breath test becomes an obligation, under Code § 18.2-268.2, to submit to either a breath test or a BAC test.  Within these two provisions alone it is clear that the General Assembly carefully constructed provisions that both protect the rights of suspected offenders and protect the ability of law enforcement officers to provide sufficient evidence to the court in seeking a conviction of anyone who they had probable cause to arrest for driving under the influence.

When a person is arrested for an alleged violation of Code § 18.2-266, the arresting officer must inform him of the implied consent law, and of the penalties for refusing to comply, before requiring his submission to chemical testing.[10]  If a person still refuses to submit to chemical testing after being properly informed of the implied consent law and its attendant consequences, the officer must bring the accused before a magistrate, who must in turn reiterate the requirements of the implied consent law and inform the accused of the consequences for unreasonable refusal.[11]  The magistrate may then charge the accused, who will be subject to a hearing on the matter of his unreasonable refusal.[12]  If he is found guilty of unreasonable refusal under Code § 18.2-268.3, that conviction may be presented at his trial for the original offense of driving under the influence in violation of Code § 18.2-266—but such a conviction is *only* admissible for the singular purpose of explaining the absence of any chemical test results at

---

[9] Code § 18.2-267(F).

[10] Code § 18.2-268.3(C).

[11] Code § 18.2-268.3(D).

[12] Code § 18.2-268.3(D); Code § 18.2-268.4.

trial.[13] Unreasonable refusal to submit to chemical testing may not be considered evidence of the accused's guilt.

In this case, while the officer testified that Mr. Latham was not given a preliminary blood test prior to arrest, there was no mention of any testing after his arrest  Technically, the omission of such information at trial was in accordance with the law.[14]  While it would have been improper for the court to consider any failure on Mr. Latham's part to submit to a BAC or breath test as evidence of his guilt,[15] the very inclusion of subsection (C) in Code § 18.2-268.10 implies the importance of chemical testing and samples in driving-under-the-influence cases.

There are further procedural requirements governing who may administer preliminary breath tests and BAC tests,[16] the manner in which the tests are to be given and processed,[17] and the rights of the accused whose blood or breath is analyzed[18] that emphasize the General Assembly's intent to ensure that convictions under Code § 18.2-266 are obtained based not only on the inherently subjective observations of even the most highly trained, qualified, and experienced law enforcement officers, but also on objective and reliable medical results that

---

[13] Code § 18.2-268.10(C).

[14] Code § 18.2-268.10(B): "The failure of an accused to permit a blood or breath sample to be taken to determine the alcohol or drug content of his blood is not evidence and shall not be subject to comment by the Commonwealth at the trial of the case."

[15] Interestingly, Mr. Latham was in fact originally charged under Code § 18.2-268.3 for unreasonable refusal to submit to chemical testing.  The arresting officer also indicated that, as required by Code § 18.2-268.3(C), he had informed Mr. Latham of the implied consent law: "[Mr. Latham] refused the official breath sample at HQ and was read the refusal form in its entirety. I'm seeking the charge DUI: 3rd offense and refusal."  The refusal charge was dismissed in Chesapeake General District Court on August 26, 2021.

[16] Code § 18.2-268.5.

[17] Code §§ 18.2-268.6, -268.7.

[18] Code § 18.2-268.9.

"removes the question [of whether a person is intoxicated] from the field of speculation and supplies the best evidence for that determination."  *Walton v. City of Roanoke*, 204 Va. 678, 683 (1963).  Evidence of chemical testing "protects one who has the odor of alcohol on his breath but has not been drinking to excess, and one whose conduct may create the appearance of intoxication when he is suffering from some physical condition over which he has no control."  *Id.*

Our case law demonstrably asserts the importance of these statutory requirements and protections.  "While the statute proscribes no time limit within which the chemical test must be administered after driving**,** it is axiomatic that *there can be no prosecution under this statute* without the existence of a chemical test obtained under the provisions of Code § 18.2-268(B)."  *Davis v. Commonwealth*, 8 Va. App. 291, 299 (1989) (emphasis added).

> [A]ny person who operates a motor vehicle upon a highway of this State is deemed to have agreed as a condition of such operation to consent to, *and shall be entitled to*, have a chemical analysis of his blood to determine its alcoholic content if he is arrested for a violation of § 18.1-54 (driving drunk statute) or of a similar ordinance of a county, city or town.

*Walton*, 204 Va. at 680.  "When taken in accordance [with] the required procedures, analyzed and identified, Code § 18.2-268.7 provides for the admissibility of the results of these blood tests at the trial for a Code § 18.2-266 offense.  This statutory scheme provides obvious protections for the accused." *Thurston*, 15 Va. App. at 479.

Without any evidence of chemical testing, the court is left with the precise scenario hypothesized in *Walton*: one who, in the light most favorable to the Commonwealth, had the odor of alcohol on his breath and whose conduct ostensibly created the appearance of intoxication.  When, as in this case, the only evidence admitted at trial showing that the accused was or was not under the influence at the time of the offense is the testimony of the accused, and the testimony of the arresting officer, who attests to the accused's appearance of intoxication,

- 16 -

there must be more than a mere showing that the accused could have been under the influence at the time of the offense. *See Miller v. Commonwealth*, 214 Va. 689, 690 (1974) ("The testimony of the arresting officer was insufficient to show more than mere probability of guilt."). The absence of chemical testing creates a substantial difficulty in any attempt to convict someone of the offenses delineated in Code § 18.2-266, a difficulty which the legislature—in designing such a thorough scheme based on the assumption that there would be chemical testing—evidently regarded as important.

### 3. Sufficiency of the Evidence

Although the absence of chemical testing does not itself render the evidence presented insufficient, its absence, in this case, *in conjunction with* the absence of any evidence even closely analogous to the evidence in relevant case law, suffices to show that the evidence was insufficient for a conviction.[19]

A review of our cases in which a conviction was sustained demonstrates the sizable disparity between the evidence here and the evidence that is typically sufficient for a conviction. In *Davis*, 8 Va. App. at 293, the defendant admitted he had consumed alcohol, performed poorly on field sobriety tests, and took a BAC test that registered at .10% by weight by volume.[20] In

---

[19] *See Brown*, slip op. at 15, 2022 Va. App. LEXIS 635, at *20 ("Therefore, in the absence of a statutory presumption, expert testimony, or other explanatory evidence, the trial court could not reasonably infer that appellant's ingestion of Ambien, melatonin, and amitriptyline impaired his ability to drive safely. Consequently, the trial court erred in finding the evidence sufficient to convict appellant of driving under the influence of drugs under Code § 18.2-266(iii).").

[20] In *Davis*, in support of the distinction between the five separate offenses listed under Code § 18.2-266, this Court noted that "whether [the defendant] was 'under the influence . . . of alcohol' was not at issue," as the defendant was convicted under Code § 18.2-266(i). 8 Va. App. at 300. Code § 18.2-266(i) prohibited driving with a blood alcohol content of .10, and the defendant in *Davis* only contested that his BAC results showing .10, taken in deviation from standard testing procedures, were insufficient to show that his BAC was .10 at the time of the offense as prohibited by the statute. *Id.* at 300-01.

*Rix*, 282 Va. at 1-2,[21] the defendant smelled strongly of alcohol, exhibited slurred speech and bloodshot and glassy eyes, swayed extensively while standing and walking, and was found guilty of unreasonable refusal to take a breathalyzer or blood test.  In *Gardner v. Commonwealth*, 195 Va. 945, 953 (1954), the defendant was swerving between lanes of traffic, staggering while walking, had the odor of alcohol on his breath, his speech was "'thick,'" his face was "flushed," and his eyes were "'bloodshot.'"  In *Hogle v. Commonwealth*, 75 Va. App. 743, 747-48 (2022), the defendant had the odor of alcohol on his breath, multiple prescription bottles in his car, admitted that he had consumed several tequila shots that day, performed poorly on field sobriety tests, was swaying and moving "improperly," could not maintain his balance, had empty Fireball bottles on the passenger side of his vehicle, and took both a preliminary breath test and a BAC test that indicated a .069% blood alcohol content and evidence of amphetamines and THC.  In *Leake v. Commonwealth*, 27 Va. App. 101, 104, 109 (1998), although no chemical testing was admitted at trial, the defendant admitted that he had a few drinks, performed poorly on field sobriety tests, was so unsteady that the officer grabbed him several times to make sure he didn't fall, could not recite the alphabet, and was cleaning his car in the middle of the night on the side of the road.  In *Thurston*, 15 Va. App. at 477-78, the defendant was driving 10 to 15 miles per hour over the speed limit, repeatedly drifting over the center line, presented with a "moderate odor of alcohol," could not remember where he was going, could not recite the alphabet, took both a preliminary breath test and BAC test, which indicated a blood alcohol content of .22% by weight by volume, and admitted to having more than five drinks.

Conversely, our case law also illustrates that even when an arresting officer has ample reason to believe, based on objectively reasonable inferences, that a person is under the

_____

[21] The defendant did not argue sufficiency of the evidence in this case; she contested only the finding that she had been operating the vehicle at the time of her arrest.

influence, a lack of evidence of alcohol renders the evidence insufficient to support a conviction. In *Miller v. Commonwealth*, 214 Va. 689, 689 (1974), the defendant was unsteady on his feet, had glassy eyes, and was slurring his speech. The arresting officer informed him that he was required to take a blood test, but the results of that test were not admitted into evidence because the test was improperly administered. *Id.* at 689-90. Additionally, there was no evidence of alcohol in his vehicle, nor was there any odor of alcohol about his person. *Id.* at 690. Given the missing results of the blood test and the lack of odor or presence of alcohol, the evidence was insufficient to support his conviction. *Id.* The Court in *Miller* compared the facts to those in *Clemmer v. Commonwealth*, 208 Va. 661 (1968). In *Clemmer*, the accused had crashed his car into a fence, was belligerent and aggressive, and yet there was no evidence of alcohol in his vehicle or on his person. *Id.* at 662-63. The evidence in *Clemmer* was also deemed "insufficient to establish beyond a reasonable doubt that Clemmer had operated his automobile under the influence of intoxicants." *Miller*, 214 Va. at 690.

The majority relies upon *Hogle*'s assertion that, "[i]n determining whether a defendant was under the influence, a factfinder considers 'all of the evidence of his condition at the time of the alleged offense,'" 75 Va. App. at 754 (quoting *Leake*, 27 Va. App. at 109), to support its affirmance of the trial court's decision. In doing so, the majority fails to consider the importance of the immediately following premise: "[a] defendant's admission that he consumed several alcoholic beverages, *together with the testimony of the arresting officer* regarding the defendant's appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol." *Id.* (alteration in original) (emphasis added) (quoting *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995)). The actual findings made by our state's courts show that something more than a police officer's observations is required to prove impairment beyond a reasonable doubt. The arresting officers in both *Clemmer* and *Miller* clearly felt that

the defendants were under the influence. They may have even been correct. But in both cases, their experiences and beliefs, as objectively reasonable and reliable as they may have been, were not enough to support a conviction. Similarly, in this case, the evidence certainly amounted to sufficient *probable cause* for the officer to arrest Mr. Latham for driving under the influence as prohibited by Code § 18.2-266. But what is sufficient for probable cause is by no means sufficient to support a conviction beyond a reasonable doubt. *See Joyce v. Commonwealth*, 56 Va. App. 646, 659 (2010) ("The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction." (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949))).

In this case, almost none of the factors that our courts have found relevant to showing that a person was under the influence were present. The trial court determined the evidence was sufficient to convict Mr. Latham for driving under the influence based upon a two-part inquiry: whether he was under the influence of alcohol, and whether his ability to drive was impaired.[22] First, the trial court determined that

> the stumble coming out of the car, the actions to get away from whether it [was] alcohol in the car to the police officer, the slurred speech—the sloshy speech, it was defined as—the odor of alcohol from his person, his eye condition, the fact that he stumbled or tripped, which was denied by the defendant—all of that indicates that something had the influence on him to affect his ability, his walk, his speech, and his appearance.

While this evidence was sufficient to establish probable cause for the officer's arrest, the trial court's assertion that "something had the influence on [Mr. Latham]" is not the basis for

---

[22] Where the "thrust of the statutory scheme" is to prohibit driving while under the influence of alcohol, *Thurston*, 15 Va. App. at 483, the prohibition against "driv[ing] under the influence" as provided in Code § 18.2-266(ii) must be considered in light of that statutory purpose. Thus, while a finding that one's ability to drive is impaired is only a requirement under (iii) and (iv), a conviction under (ii) must be supported by the understanding that one's consumption of alcohol necessarily "influence[d]" him. Code § 18.2-266(ii).

- 20 -

conviction.[23] There must be a finding that he was under the influence of alcohol, not that he was under the influence of "something."

Furthermore, the court's secondary finding that his ability to drive was impaired because "something" influenced him was based primarily on Mr. Latham's "braking . . . [3] or [4] times in a matter of 10 or 15 seconds." In considering his braking as evidence of being under the influence of alcohol such that it affected his ability to drive, the trial court reasoned that "[Mr. Latham] probably was doing that to appear that he was overly cautious once he saw the police officer behind him," because "people under the influence can overreact and overexaggerate their actions." He further opined that "[Mr. Latham's] body reactions could not control the slow braking and slow acceleration, which attracted the attention." It is true that "[o]ne may be both drunk and reckless. He may be reckless though not drunk; he may even be . . . . under the influence of intoxicants and yet drive carefully"; however, a mere showing that a defendant exhibited unusual driving behavior is not enough to establish that he was under the influence of alcohol. *Spickard v. City of Lynchburg*, 174 Va. 502, 504 (1940). Indeed,

> [i]t is a matter of common knowledge based on human experience that outward manifestations of intoxication will vary from individual to individual. While one highly intoxicated individual may exhibit few, if any, outward manifestations of intoxication, another individual may appear to be very intoxicated after consuming a small quantity of alcohol.

*Davis*, 8 Va. App. at 295-96. It was this consideration that led "1980s state legislatures [to] enact[] legislation to strengthen the current laws against driving while under the influence of

---

[23] *See Brown*, slip op. at 14, 2022 Va. App. LEXIS 635, at *19 ("As a final point, this Court holds that a trial court cannot reverse engineer this causal link by claiming a defendant's car accident inherently creates a reasonable inference of impairment, even where the defendant's fault in causing the accident is undisputed. Although not immaterial to this inquiry, the trial court's determination here that appellant violated Code § 46.2-816 does not inherently give rise to a reasonable inference that appellant was following the Johnsons' vehicle too closely *as a result of* having taken zolpidem, amitriptyline, and nortriptyline.").

alcohol," and "[c]entral to that legislation was the use of chemical tests to prescribe a maximum blood alcohol level beyond which driving would be unlawful" because "[i]n theory, such tests eliminated the difficulties inherent in a subjective determination whether a person was 'under the influence of alcohol.'" *Id.* at 296.

Our case law emphasizes that, when determining whether the totality of the evidence is sufficient to support a conviction for driving under the influence, evidence of the defendant's condition must be considered in conjunction with other relevant factors. A person who is driving under the influence is typically unable to maintain his lane of traffic, cannot maintain proper balance either during field sobriety tests or during his interaction with law enforcement officers, endangers others with his driving, and is unable to respond coherently to the questions of law enforcement officers.

In *Thurston*, the Court held that "[t]he blood test results *and the other evidence* of [the defendant's] condition," specifically the "evidence of [the defendant's] consumption of alcohol prior to operating his car, the manner in which he operated his car, his inability to recite accurately the alphabet, and his conduct during the testing procedure[,] all *combine* to establish" that there was "no room for reasonable doubt that [he] was under the influence of alcohol at the time he operated his car." 15 Va. App. at 484 (emphases added). In *Hogle*, this Court found that "[b]ased upon the totality of evidence in [the] record, a rational finder of fact could have found beyond a reasonable doubt that Hogle was operating his vehicle while under the influence of alcohol or a combination of alcohol and drugs," when, even though "Hogle's BAC of 0.069 at 4:53 p.m. *did not give rise to a presumption that he was under the influence of alcohol*," because "the trial court was entitled to consider the BAC *along with other competent evidence*," specifically that "Hogle admitted consuming 'several' shots of tequila earlier in the day, . . . there were empty mini-bottles of liquor in his car," and "Trooper Stagner noted the odor of alcohol on

Hogle's breath, his bloodshot eyes, his inability to perform the walk-and-turn test correctly, and his failure to follow any of the instructions on the one-leg test." 75 Va. App. at 754 (emphases added). Only upon "[c]onsidering *all of these facts and circumstances*" could "a reasonable finder of fact . . . conclude that Hogle had consumed enough alcohol, or a combination of drugs and alcohol, to 'affect his manner, disposition, speech, muscular movement, general appearance or behavior.'" *Id.* at 755 (quoting *Thurston*, 15 Va. App. at 483). In *Riley v. Commonwealth*, 277 Va. 467, 471-72 (2009), the defendant was "wearing sweatpants and a t-shirt despite the fact that it was 30-35 degrees outside," was "swaying back and forth and speaking incoherently," and "informed [the arresting officer] that he had consumed 'two shots of whiskey.'"

In *Thurston*, *Hogle*, and *Riley*, the totality of the evidence before the court included swerving, inconsistent driving patterns, inexplicable behavior, and prolonged physical manifestations of the appearance of intoxication. In this case, the arresting officer admitted that Mr. Latham's vehicle "maintain[ed] its lane of travel the entire time that [the officer] [was] observing it," that the vehicle's speed was "consistent," that there was "never any swerving," that there was "nothing in [the officer's] notes . . . [to] indicate[] that [Mr. Latham] did not signal" when making "two turns," that the area in which Mr. Latham applied his brakes "has a lot of dips and potholes," that the "behavior of the vehicle wasn't extreme," that Mr. Latham "didn't fall, at any point," that even when Mr. Latham stumbled out of his vehicle he "didn't topple over," nor did he ever "lose his balance [at any point during their 20 minute interaction]," that he "never leaned, sat, or used any support or brace for his stability," that all of his responses were pertinent to the situation, that he gave an "accurate date and time" as well as an accurate and coherent description of where he was, where he was going, and where he was coming from, and that he "denied having any alcohol that day." In stark contrast to the evidence in cases like *Riley*, *Davis*, *Thurston*, and *Hogle*, the record before this Court and the trial court contained no

evidence of swerving, prolonged physical manifestations of intoxication, admission of alcohol consumption by the defendant, or incoherence. In the absence of such evidence, a mere showing of "quick braking" cannot be said to be sufficient.

It is true that "[w]hat weight should be given evidence is a matter for the [factfinder] to decide," but it is equally true that, to support a conviction, the evidence so weighed must show guilt beyond a reasonable doubt. *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (second alteration in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). The General Assembly, in primarily enacting and subsequently amending Code § 18.2-266 and its attendant sections, demonstrated the importance of ensuring that such reasonable doubt is overcome. Indeed, even in expressly stating that "[f]ailure to comply with any steps or portions [of steps set forth in Code §§ 18.2-268.2 through 18.2-268.9 relating to taking, handling, identifying, and disposing of blood or breath samples] shall not of itself be grounds for finding the defendant not guilty," the Virginia Code requires that such failure "shall go to the weight of the evidence and shall be considered with all the evidence in the case."[24] Here, the trial court weighed the evidence, but the absence of any chemical testing or compliance with the requisite code provisions was given no weight at all.

"The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). In this case, the answer to that question is, "no." Therefore, I would reverse the trial court's decision.

---

[24] Code § 18.2-268.11.